JOHN FILIPPO

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 22, 1906.*

1. MURDER—*right of a person to arm himself against a second assault.* One who has already been violently assaulted by a man stronger than himself has a right to arm himself for his protection against another possible assault by such person.

2. SAME—*when instruction relating to self-defense is erroneous.* In a murder trial, where it is proved defendant was not the assailant, it is error to instruct the jury that to justify acquittal on the ground of self-defense it must appear "that the person assaulted by the defendant was the assailant,—that is, that the defendant had really and in good faith endeavored to decline any further struggle before such assault was made by him."

3. SAME—*when instruction is misleading.* An instruction in a murder trial holding that the law of self-defense does not imply the right of attack in the first instance nor permit of an action done in retaliation or revenge, although a correct statement of the law, is misleading where there is no evidence tending to show that the de-

fendant was the attacking party or that the killing was in retaliation or revenge.

4. SAME—*proof that deceased left a wife and children is not admissible.* While it is not essential to a fair trial of one charged with murder that the fact of the deceased having left a wife and children be kept from the jury, yet such fact is not material nor relevant, and is not admissible in evidence for the alleged purpose of identifying the deceased.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

LYNN & ROE, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (ROBERT N. HOLT, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error, John Filippo, was found guilty by a jury in the criminal court of Cook county of the murder of Vito Gironda, and his punishment was fixed at confinement in the penitentiary for a term of eighteen years. He was sentenced in accordance with the verdict.

The killing was admitted, and the defense was that it was done in self-defense. The evidence established the following facts: The defendant and Vito Gironda were Italian laborers and friends. On March 24, 1905, they met in a saloon at Clark and Twentieth streets, in the city of Chicago, and played cards. After they quit playing they went to the bar, and Gironda ordered two bottles of beer for himself and defendant took a glass of beer. Gironda insisted that defendant was the loser in the card games and should pay twenty-five cents for the beer, but defendant declined to pay, and Gironda walked up to him and struck him in the face with his open hand. The saloon-keeper, who said Gironda held off and smashed defendant in the face with his

hand, thought that he struck him once.  A bystander said it was twice, and the defendant testified that it was four or five times.  Defendant did nothing and made no resistance, and the saloon-keeper went round between them and stopped the assault.  The defendant went out of the saloon and Gironda remained for a few minutes drinking his beer and then left, and neither one paid for the beer.  Defendant went to his boarding place, two blocks away, and to his room, remaining there two or three minutes.  It was about seven o'clock and they were eating supper.  The boarding-house keeper asked him why he did not come and eat, and he said he would be back in a few minutes.  He then went back and stood near the saloon, about five feet from the front door. Gironda, who lived at 1911 Clark street, came from the direction of his home to where the defendant stood, and they were seen on the street corner talking in Italian.  Gironda remained on the corner and the defendant went out in the middle of the street, about twenty feet away.  There was no evidence what the conversation was, and it was not loud but was evidently unfriendly.  After talking a few minutes Gironda was heard by an Italian boy twelve years old, who was playing in the street, to say, "So you have your hands in your pockets, Oh!" as the boy translated it at the trial. Gironda, who was a heavier and stronger man than the defendant, then started toward him.  The defendant made no advance and did nothing until they were somewhere from three to six feet apart, when he drew a revolver from his pocket and fired a shot, apparently toward the ground, which he testified was for the purpose of scaring Gironda. Following that he fired three shots which took effect in Gironda's body, at 'the same time stepping back.  The boy said that he fired one shot and went across the track and turned and shot, and Gironda was after him all the time. The saloon-keeper thought they were not more than two or three feet apart when the shots were fired, and another witness fixed the distance at about six feet.  Gironda was

advancing upon the defendant, who did not make any advances and did not show any sign of an intention to assault Gironda until he drew the revolver. As soon as the shooting was done the defendant turned and ran rapidly away, and Gironda, although mortally wounded, ran after him a block or more until he fell. The theory of the prosecution was that defendant armed himself when at his boarding house, but his testimony was that he had been carrying the revolver for a month. He testified that when Gironda started toward him he called him a bad name and came with a knife in his hand; that when Gironda reached him he fired the first shot at the ground, and Gironda said, "You will have to die," and was attacking him with a knife when he fired the other shots.

There was no dispute of the fact that Gironda was the aggressor both in the saloon and on the street, and that fact was proved by the prosecution. The defendant was assaulted in the saloon, and there would have been no killing except for the second advance upon him by Gironda in the street. Probably the defendant armed himself with the revolver when he went to his boarding house, and if he and Gironda had, either or both of them, stayed at home they would both have been safe, but as a matter of fact both came back. There is nothing in the evidence tending to prove that defendant armed himself or went back with any intention of revenging himself upon Gironda for the assault in the saloon, or as to which one began the talk on the street. The defendant had an undoubted right to arm himself, if it was only for his own protection against a possible assault from a man stronger than he who had already violently assaulted him. Although both parties went back to the vicinity of the saloon, they were on the public street, where they both had a right to be, and defendant left the sidewalk and went out in the middle of the street. He was undoubtedly complaining to Gironda of the injustifiable assault upon him and upbraiding him, but was not manifesting any intention

to assault him. The simple and only controverted question of fact in the case was whether the appearances and circumstances were such as to justify the defendant in what he did, and it will be apparent that the case was one which called for care and accuracy in directing the jury as to the law as well as in the admission of evidence.

Several instructions given at the request of the prosecution were not adapted to the case and were misleading and prejudicial to the defendant. One of them, after stating that in order to justify an acquittal on the ground of self-defense the appearances must be such at the precise time the fatal shot is fired as to induce a belief that the person firing the shot is in danger of losing his life or receiving serious or great bodily harm or injury, added this further qualification: "And it must also appear that the person assaulted by the defendant was the assailant,—that is, that the defendant had really and in good faith endeavored to decline any further struggle before such assault was made by him,— before an acquittal is warranted on the ground of self-defense." The provision of the statute is, that it must appear that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given. A defendant is entitled to prove either that the person assaulted by him was the assailant, or that he himself had really and in good faith endeavored to decline any further struggle before the killing. This instruction advised the jury that before an acquittal would be warranted on the ground of self-defense the defendant must prove not only that the appearances justified his action, but that Gironda was the assailant, and that the defendant had in good faith endeavored to decline any further struggle. Defendant had not attacked Gironda and was not required to make any such proof as the instruction required. The instruction clearly implied that the court thought defendant was an assailant and ought to have declined further struggle on his part.

Another instruction told the jury that the law of self-defense does not imply the right of attack in the first instance, nor does it permit of an action done in retaliation or done in revenge. This instruction, and another on the subject of voluntary manslaughter, although correct as statements of law, had nothing to do with the case. Instructions are given to aid the jury in deciding the case on trial, and there was no evidence tending to prove that defendant was the attacking party or that he killed Gironda in retaliation or revenge.

In making out the case for the prosecution the court permitted proof that Gironda was married and had five children. The fact was not brought to the notice of the jury incidentally, but was presented in such a way as to give the jury to understand that it was a matter material and proper to be proved. That fact had nothing to do with the guilt or innocence of the defendant or the punishment to be administered to him, and the only reason offered to the court for proving it or justifying the ruling is, that it was for the purpose of identifying the deceased. Of course that was a mere pretense, which could not have deceived the court. The only object was to prejudice the jury against the defendant by showing that Gironda left a widow and five fatherless children, which was put before the jury as a material element in the case. While it is not essential to a fair trial that such facts should be kept from a jury, they are not material or relevant to the issue, nor admissible, in a case like this, for the alleged purpose of proving identity. The evidence was not competent and tended to prejudice the defendant.

In view of all the evidence and the instructions we are satisfied that the court ought to have awarded a new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*