(No. 11435.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* AUGUST BATTAGLIA, Plaintiff in Error.

*Opinion filed December 19, 1917—Rehearing denied Feb. 6, 1918.*

1. CRIMINAL LAW—*when instruction defining involuntary manslaughter is not prejudicial in eliminating the element of intent.* An instruction defining involuntary manslaughter, although wholly inapplicable to the case, is not prejudicial in eliminating the element of intent in a prosecution for murder, where the defendant himself testified that the shooting was intentional and the jury found him guilty of manslaughter.

2. SAME—*when instruction that right of self-defense does not imply right of attack is permissible.* Where there is some evidence that the defendant in a murder case began the fight which resulted in the killing, an instruction which tells the jury that the right of self-defense does not imply the right of attack in the first instance, and that the defense of self-defense is not available if the shooting was done from motives of retaliation or revenge, is permissible.

3. SAME—*when instruction as to self-defense is proper.* An instruction in a murder trial which informs the jury that one acting in self-defense can use only such force as is absolutely or apparently necessary for his defense is proper.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.

STEPHEN A. MALATO, and FREDERIC BURNHAM, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (GEORGE C. BLISS, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiff in error, August Battaglia, shot with a revolver and killed Philip Caruso on March 23, 1916, in front of the grocery store of Thomas D'Amico, at 188 East Twenty-second street, the business center of the Italian and Polish settlement in the city of Chicago Heights, and was

indicted for murder and convicted of manslaughter in the criminal court of Cook county.

The defendant and Philip Caruso were each in the fruit and vegetable business in Chicago Heights. Early in the morning of March 23 the defendant went to the warehouse of Battaglia Bros., a firm of which he was a member, loaded his wagon and went to Twenty-second street. He carried a revolver with him in his overcoat pocket. He stopped at stores of different dealers in fruit and vegetables, where he disposed of his produce and took orders for future delivery of fruit and vegetables that he did not have on his wagon. He went back to the warehouse and again loaded his wagon to deliver the orders and drove back to Twenty-second street about ten o'clock. He stopped at one store and then drove toward D'Amico's and stopped back of the wagon of Philip Caruso, which was standing in front of the store. Caruso was on the seat of his wagon and both men got down and met in the space between the two wagons. A number of persons heard two shots and ran toward the men and saw them fighting and rolling around on the ground. The street was not paved and there had been a light snow. The defendant appeared to the witnesses to have the better of the fight and was on top most of the time, but they were lying on the ground grabbing at each other and rolling around. The defendant got up and ran away, and there was a bullet wound about three inches below the center of the left arm-pit of Caruso, the bullet having passed through the left lung and heart and into the right lung, where it was embedded. Blood was oozing from his nose and mouth and he died immediately, and the defendant was bleeding from the nose and had blood on his face. As the defendant ran away he was carrying his revolver and wiped it on his arm. Besides the witnesses who testified to these facts Walter Adamovitz testified that he was peddling bills that day with two of the other witnesses, and he told about the same story, with the exception of the addition that when

the defendant drove up he stepped on the wheel of Caruso's wagon, touched him on the shoulder and told him to come down.

The defendant testified in his own behalf and said that he had never had any trouble with Caruso, but about seven or eight days before March 23 Caruso, in going by the Battaglia warehouse, said, "I will fix you," to which the defendant replied, "I never done nothing to you; I don't see any reason why you should fix me," and Caruso again said, "I will fix you." As to the affray when Caruso was killed, the defendant testified that when he drove up near D'Amico's, Caruso turned around on the seat and said, "Come down off your wagon," and jumped off his wagon; that defendant walked toward Caruso and they met about the center of the space between the two wagons, when Caruso struck him on the nose; that he grabbed Caruso with his hands by the neck; that Caruso made a down motion toward his back pocket, and the defendant then drew his revolver and shot; that they stumbled in the mud, and the defendant walked away with his nose bleeding and his face full of blood. He said that he had been carrying a revolver for four or five years because he was in the habit of collecting for his firm, and at that time had $600 in currency and $200 in checks in his pocket. Caruso was unarmed and had nothing in his pockets except two handkerchiefs, a pocket-book, which was sort of a pouch of chamois-skin closed with a clasp, inside of which there was a jack-knife, and some string, which appeared to have come off of the pocket-book, was also found in the pocket.

The evidence justified the verdict. The men came together between the two wagons and had a fight, in which the defendant was struck on the nose, causing it to bleed, but whatever was the cause or occasion of the fight, Caruso was unarmed and never displayed a weapon at any time. He certainly did not attempt to draw any weapon, and it was natural that the jury should discredit the testimony of

the defendant that Caruso made a down motion toward his back pocket of such a nature as to justify the shooting.

Several of the instructions given at the instance of the prosecution are criticised. The instructions were mostly abstract in form and apparently provided for use in every case of homicide without regard to the facts of the particular case. Instruction No. 9 was of that character and defined involuntary manslaughter. It was wholly inapplicable to the case, since under no phase of the evidence could it be said that the killing was involuntary manslaughter, even from the testimony of the defendant. The killing was accomplished by voluntary, intentional shooting, and as the instruction was based upon no evidence, the error in giving it would require reversal if it did not appear that the jury could not have been misled by it. We do not see how the jury could have been influenced to find the defendant guilty of killing Caruso without any intent to do so because of the definition of involuntary manslaughter, in the face of the testimony of the defendant that the shooting was intentional. While the purpose of instructions is to aid the jury in determining the issue in each case, it cannot be said that defendant was injuriously affected by the instruction.

Particular objection is made to instruction No. 13, which told the jury that the right of self-defense does not imply the right of attack in the first instance nor does it permit of action done in retaliation or in revenge, and if defendant shot Caruso in the spirit of utter disregard of human life or from motives of retaliation or revenge, the defense of self-defense would not be available to him. An instruction of that kind was condemned in *Filippo* v. *People,* 224 Ill. 212, and *Foglia* v. *People,* 229 id. 286, because in neither case was there any evidence tending to prove that the accused did make an attack upon the deceased, but in this case it was a fair inference from the testimony of Adamovitz that the defendant was the attacking party when he touched Caruso on the shoulder and invited him to come

off of the wagon, and the prosecution had a right to an instruction on the theory that such was the fact.

Instruction No. 12 is objected to because it told the jury that one acting in self-defense can only use such force as is absolutely or apparently necessary for his defense. The instruction was exactly in accord with the statute, which requires that the danger to the person killing another in self-defense must be so urgent and pressing that the killing of the other is absolutely or apparently necessary in order to save his own life or to prevent his receiving great bodily harm. It was not error to give it.

Instruction No. 14 was one of the instructions abstract in form in readiness for all cases and related to circumstantial evidence and the conditions under which such evidence would warrant a conviction. There was very little in the case to which it could apply, but there were the circumstances that Caruso was unarmed and that the defendant came down from his wagon and advanced to meet him, and the judgment could not be reversed on account of that instruction.

It is argued that instructions numbered 10 and 26 implied that the defendant assaulted Caruso, but neither instruction is subject to that objection. Instruction No. 10 required the jury to believe from the evidence, beyond a reasonable doubt, that the defendant did make an assault upon Caruso with intent to kill him; that such assault resulted in the death of Caruso, and that the defendant did not act in self-defense. Instruction No. 26 carried no implication that the defendant made the assault, but told the jury that the intent alleged in the indictment was necessary to be shown but might be inferred from facts and circumstances shown by the evidence.

The judgment cannot be reversed for error in instructing the jury.

It is objected that the court failed to restrain the State's attorney from making improper argument to the jury.

There was objectionable argument that the prosecution labored under very great difficulty in obtaining evidence, with particular allusion to the silence that prevailed in the Italian quarter in Twenty-second street with respect to similar cases. There was also some attempt to create prejudice as between native-born citizens and others, and the jury were exhorted to put an end to the wholesale killing. The conduct of the State's attorney was inexcusable but the court sustained objections to arguments of that character, and in view of the ruling the argument furnishes no sufficient ground for reversing the judgment.

There was a motion for a new trial trial based on an interview with the witness Walter Adamovitz by the attorneys for the defendant in which he said that he was promised money by Caruso's sister for testifying, and that the fact was that the first thing that attracted his attention was the people running to the place of the fighting where the two men were rolling on the ground, which was inconsistent with his testimony that the defendant went to Caruso's wagon, touched him on the shoulder and invited him to come down. He then gave an account of the fight which did not indicate in any way that the defendant acted in self-defense or had any reason to believe that Caruso was about to draw a weapon. In fact, he said the first thing he saw was that the defendant struck Caruso and Caruso then struck the defendant, and according to his account of the affair at this interview the verdict was right. Counter-affidavits showed that no money was promised to the witness, and Adamovitz testified that no one told him to testify falsely, that no money was paid to him and that he told nothing before the jury which was not true. Assuming that Adamovitz was an untruthful and unreliable witness, the verdict was nevertheless the only one justified by the evidence.

The judgment is affirmed.          *Judgment affirmed.*