(No. 59212.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CHARLES WALKER, Appellant.

*Opinion filed December 20, 1985.—Rehearing denied February 4, 1986.*

486

488

SIMON, J., concurring in part and dissenting in part.

Charles M. Schiedel, Deputy Defender, and Lawrence J. Essig, Assistant Defender, of the Office of the State Appellate Defender, of Springfield (Carroll J. King, of Tenney & Bentley, of Barrington, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Mark L. Rotert and Scott Graham, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

The defendant, Charles Walker, pleaded guilty in the circuit court of St. Clair County to two counts of murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1) and to one count of armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18—2). The court entered judgments on the pleas, and a jury was impaneled to decide whether the death sentence should be imposed. The jury found statutory aggravating factors to exist (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(3), (6)) and determined there were no factors in mitigation sufficient to preclude imposition of the death penalty. The court sentenced the defendant to death on the murder counts and imposed a 30-year term of imprisonment on the armed-robbery count. The death sentence was stayed under our Rule 609 (87 Ill. 2d R. 609(a)) pending direct appeal to this court (Ill. Const. 1970, art. VI, sec. 4(b); 87 Ill. 2d R. 603).

On the morning of June 19, 1983, the bodies of Sharon Winker and Kevin Paule were found on the west bank of Silver Creek one-half mile west of Mascoutah. St. Clair County deputy sheriffs found Winker, slumped forward and with her hands bound behind her with tape, near a path leading into a wooded area. She had been

shot once behind the left ear. Paule was found approximately 20 feet from Winker. His hands were taped together and his arms were taped behind him and secured around a tree. He had been shot in the right temple. The deputy sheriffs found a .25-caliber shell casing four feet from Paule's body. They also found two lawn chairs on the bank of the creek.

An autopsy revealed that Winker had been shot in the left occipital portion of the skull and that the bullet lodged in the left frontal lobe of her brain. This caused a laceration and swelling of the brain, resulting in death. Paule died from a single shot which left a bullet lodged in the left parietal lobe of the brain, similarly causing a fatal laceration and swelling. The pathologist recovered spent .25-caliber pellets from the skull of each victim.

On July 15, 1983, Walker was apprehended by authorities in Walden, Colorado. They had been notified by the St. Clair County sheriff's department that he was a suspect in two murders and might be in Colorado. He was returned to St. Clair County, where he was arraigned on July 27. Walker waived preliminary hearing and stated that he wished to plead guilty to two counts of murder and one count of armed robbery. The court read the charges to him, explained the rights that would be waived by a guilty plea, advised him of the range of possible sentences that he might receive on each charge, told him of the prosecution's intention to seek the death penalty, and ascertained that no threats or promises had been made in exchange for his pleas. The court accepted the defendant's plea of guilty on each count; the defendant then requested that a jury be impaneled to determine whether the death penalty should be imposed.

In the first phase of the sentencing hearing, at which the jury was to determine whether Walker was eligible for the death penalty, St. Clair County Sheriff Mearl Justus and Lieutenant James Lay testified that they ac-

companied the defendant from Colorado to the St. Clair County jail. Walker did not talk to either of them regarding the charges while they were en route. At the jail, Walker waived his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and confessed to the murders and to an armed robbery that was committed the same night at a nearby tavern. Lieutenant Lay transcribed the confession, and this statement, signed by the defendant, was read into evidence during the first phase of the sentencing hearing.

The defendant told the officers that he left Fayetteville on the morning of June 18, 1983, to fish at the reservoir near Mascoutah. Around noon, he drove his red Pontiac convertible to Mascoutah in order to buy a 12 pack of beer. He returned to the reservoir and after fishing there for half an hour, left to fish the west bank of Silver Creek. Walker said that an hour later Kevin Paule and Sharon Winker, who he did not recognize, came and set up two lawn chairs and fishing equipment along the bank of the creek. Walker conversed with the couple for a short while and then, he said, decided to rob them. He said that he pointed a .25-caliber gun at them and took Paule's wallet, which contained $40. Walker then directed Paule and Winker along a path 30 to 40 feet into a wooded area where he bound their hands behind them and secured them around trees with tape from his car. Walker stated that he was in the process of taping Winker when Paule said that he recalled the defendant and knew his name to be Walker. Walker said he made the decision to kill the couple so that he would not later be identified. He shot Paule and then Winker.

Walker told the officers that he put the couple's fishing equipment in his car, and then drove Winker's car to Mascoutah to buy more beer. He returned to the reservoir, abandoned Winker's car, and walked to his own auto. Walker drove to the home of his girlfriend, Ra-

mona Daugherty, in Fayetteville and, informed by his niece that Ramona was not at home, he went to a tavern in Fayetteville. He was there 30 minutes later when Officer Debra DeWitt of the Fayetteville police department entered and asked him to accompany her because Walker's niece had reported that Walker had been brandishing a gun when he was at Ramona's house. Walker said in his statement that, once outside the tavern, he was able to get to his car and drive away as DeWitt went to the police car for her radio.

Walker also gave Justus and Lay a statement confessing to the armed robbery at the Runway Lounge near Scott Air Force Base in Mascoutah. He said that later on the night of June 18, he drove to the Runway Lounge and began drinking beer while playing the "game machines." Walker told the officers that after he spent all of his money, he decided to rob the owner, Richard Jones, and the barmaid, Emily Gage, who were the only persons in the tavern. Walker said that he told Jones at gunpoint to give him the money from the cash register and then ordered Jones and Gage to lie on the floor. A car drove into the parking lot as he left the tavern, and Walker said that he heard Jones shouting that he had been robbed. Walker walked to his car but, as he tried to drive from the parking lot, his car was rammed by another car. He shot at the driver of the car, but the driver backed up and then rammed Walker's car again. When the defendant's car stalled, he alighted from it, dropped his gun on the ground near the door of his car and then ran across a field abutting Scott Air Force Base.

In the first phase of the sentencing hearing, Douglas Phillips testified that he was fishing at Silver Creek with his two sons about 2 p.m. on June 18, when he saw the defendant walking along the bank of the creek. The defendant stopped and spoke briefly with Phillips and his sons. Walker was holding a can of beer, but he did not

appear to be intoxicated. Phillips testified that at 7:30 that evening he was again at the creek to fish with his sons. He heard a gunshot but said that he did not consider this unusual because the area was popular for target practice and squirrel hunting. Thirty minutes later, the witness saw the defendant walking toward his sons and him. Walker stopped to talk with them, and Phillips testified that the defendant showed no signs of intoxication at this time. Phillips saw the defendant place some fishing equipment in a red Pontiac.

Richard Jones also testified at the first phase of the sentencing hearing. He said that he owned the Runway Lounge near Mascoutah and had known the defendant as a patron of the tavern. Around 10 p.m. on June 18, Walker entered and sat at the bar. Jones stated that Walker drank four or five beers but did not appear to be intoxicated. At 1 a.m., after all other patrons had left, Walker announced to Jones and the barmaid, Emily Gage, that he intended to rob them. The witness, who was familiar with weapons, saw a "nickel plated .25 caliber automatic" gun in Walker's right hand. Walker told him to open the cash register and, after taking the money in the drawer and some rolls of quarters which were kept under the bar, the defendant ordered Jones and the barmaid to lie face down on the floor. The witness recounted that he warned Walker that he "can't get away with this" because Jones knew his identity, but Walker replied, "Dick, it don't make any difference ***. The police are already looking for me."

As Walker left the tavern, Jones saw the headlights of an oncoming automobile through the tavern windows. He later saw that it was his car being driven by his son. He ran outside and shouted to his son that he had been robbed by the defendant, who was walking towards his Pontiac. Jones told his son to go in the tavern and stay there and, as Walker attempted to leave the parking

area, Jones rammed his car into the passenger side of Walker's Pontiac. Jones said that he rammed the defendant's car a second time, striking the driver's door. He saw Walker raise his arm and, as the witness dropped down in the front seat of his car, Jones heard a gunshot. The bullet struck the windshield on the passenger side. The witness testified that he got out of his car and saw the defendant running across a field.

Deputy sheriffs called to investigate the armed robbery at the Runway Lounge found a .25-caliber gun on the ground near the passenger door of the Pontiac. The prosecution's evidence showed that the pellets recovered from the bodies of Paule and Winker, the shell casing found near Paule's body, and a shell casing found on the tavern parking lot were from the gun found at Walker's car. The deputies found in Walker's car a styrofoam cooler, portable radio, tackle box, and fishing poles. Relatives of the victims identified these items at the hearing as property of the slain couple.

The defendant's earlier convictions for attempted murder, armed robbery and two convictions for burglary were read into the record by the prosecutor.

Dr. Daniel Cuneo, a clinical psychologist who examined Walker at the request of defense counsel, testified for the defendant in the mitigation and aggravation phase of the hearing. He said that he diagnosed Walker as an alcoholic and, although he did not consider the defendant insane, the witness was of the opinion that Walker's dependence on alcohol amounted to a severe emotional disturbance. He based his diagnosis on, among other factors, a pattern of pathological alcohol use, his inability to hold a job for any period of time, and changes in personality and intelligence. Dr. Cuneo noted that every conviction in Walker's record occurred after alcohol abuse and concluded that there was a correlation between Walker's criminal behavior and alcohol abuse.

The witness observed that Walker showed remorse after learning what he had done while intoxicated, which is consistent with the behavior of alcoholics, and which the witness maintained was manifested in Walker's plea of guilty every time he was charged with an offense. Dr. Cuneo testified that often an alcoholic will develop a tolerance to alcohol that allows him to suppress outward signs of intoxication, but the witness said that when this does occur the alcoholic's judgment would nevertheless be impaired.

The defendant's half-sister, Lila Docherty, testified in mitigation that Walker was a gentle person who had established a good rapport with her young son. Docherty said that Walker's personality changed when he drank, and she recalled an incident when Walker threatened his mother with a knife while intoxicated, and then expressed remorse for the incident when sober. Walker's girlfriend, Ramona Daugherty, too said that Walker was a kind person when sober, but became violent when drunk. She stated that the defendant once shot his dog in a drunken rage, but regretted the shooting the next day. Fayetteville police officer Debra DeWitt testified that Walker always seemed to be drinking and that this habit led to violent behavior. She said that she had seen Walker consume large quantities of alcohol and yet not appear intoxicated.

The defendant first argues that his guilty plea was not knowing or voluntary because the court erred, the defendant says, when explaining the possible sentences on each charge. The court told the defendant that the two murder counts would be considered separately in sentencing and that the defendant could be sentenced on each count from 20 years' imprisonment to imposition of the death penalty. The court advised Walker that it had discretion to enhance or double any term of years imposed and that one possible sentence was natural life im-

prisonment. The defendant says this was erroneous under this court's decision in *People v. Taylor* (1984), 102 Ill. 2d 201, where it was held that section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(c)) mandates a sentence not less than natural life imprisonment upon conviction of murdering more than one person. The defendant argues that because he was pleading guilty to two murders, the admonishment that he might receive a term of years was misleading and therefore did not meet the requirements of Supreme Court Rule 402 (87 Ill. 2d R. 402). He asserts that he was thus denied due process as guaranteed under *Boykin v. Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (plea of guilty must be affirmatively shown to be voluntary and intelligent before it can be accepted).

The State points out that the defendant's failure to raise this question in either of the two motions he brought to withdraw his guilty pleas and vacate the judgments constitutes a waiver of the issue in this court. (87 Ill. 2d R. 604(d).) Our rules do permit a reviewing court, in its discretion, to consider "[p]lain errors or defects affecting substantial rights" even though they were not objected to in the trial court. (87 Ill. 2d R. 615(a); *People v. Holman* (1984), 103 Ill. 2d 133, 176.) Though it is not clear there was plain error we will consider the contention.

It should be noted that it cannot be stated certainly that the admonition was erroneous. When Walker was sentenced, this court had not yet decided *Taylor,* and the appellate court sitting in the first district had held that a trial court had discretion under section 5—8—1(a)(1)(c) to determine whether a term of natural life or for a term of years should be imposed following a conviction for more than one murder. (*People v. Taylor* (1983), 115 Ill. App. 3d 621.) Our holding reversed this decision. It ap-

pears that the only other decision on the issue was in *People v. Bush* (1981), 103 Ill. App. 3d 5, where the appellate court in the second district held that the section required the imposition of a sentence of natural life. Too, it can be noted that the trial court here admonished Walker before hearing and before considering the State's recital of the factual basis for the pleas of guilty. It was then not certain that the court would accept pleas of guilty to both charges of murder. If, for whatever reason, the court did accept the defendant's plea of guilty to only one count, there is no doubt that the court would have had discretion to sentence him to a term of years.

Even if assuming, *arguendo,* that the admonishment on its face could have been misleading, it is nonetheless apparent that the court did comply with Rule 402 and that the defendant was not denied due process. Rule 402 in part provides:

"In hearings on pleas of guilty, there must be substantial compliance with the following:

(a) Admonitions to Defendant. The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
* * *

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; * * *."
87 Ill. 2d R. 402.

Rule 402 was adopted to insure compliance with the requirement of *Boykin* that a guilty plea must be affirmatively shown to have been made intelligently and voluntarily before a court may accept it. (87 Ill. 2d R. 402, Committee Comments.) This court has held that the requirements of Rule 402 need only be substantially, as the rule states, complied with to satisfy the requirements for due process. (*People v. Stewart* (1984), 101 Ill. 2d 470,

484, quoting *People v. Krantz* (1974), 58 Ill. 2d 187, 192.) The entire record will be considered to determine whether the defendant understood the nature of the charge or charges to which he was pleading. (*People v. Stewart* (1984), 101 Ill. 2d 470, 484.) The record here rejects Walker's contention that he was misled by the court's admonition. He had no expectations that were denied. He was aware of the serious nature of the charges and was informed both by the court and by the prosecutor that, once his pleas of guilty to murder were accepted, the prosecution intended to ask for the death penalty. The defendant and his attorney stated on separate occasions that the defendant expected nothing less than natural life imprisonment as a punishment. During the hearing in mitigation, there was this colloquy between Walker and his attorney:

"Counsel: Do you want those people to spare you your life?

Walker: Yes, I do.

Counsel: If they do, would you represent to them that you won't ask of this court anything more than to be penned (*sic*) in the penitentiary for your life?

Walker: Yes, sir.

Counsel: Not a shorter term of sentence?

Walker: Yes, sir.

Counsel: You don't expect any more than to be deprived of your liberty for the rest of your life, do you?

Walker: No, sir."

In closing argument, defense counsel stated that he was "arguing, pleading for a man to be thrown in four dark walls and bars and deprived of his liberty for the rest of his life." Later in argument he asked that Walker be allowed "to spend the rest of his life behind four walls with hostile guards." Walker's contention that he pleaded guilty because of a belief from the court's admonition that he could be sentenced to a term of years is untenable on this record.

Walker argues also that his guilty plea was not knowing or voluntary because the trial court failed to admonish him that a plea of guilty but mentally ill could be offered. He contends that his dependence on alcohol was a sufficient ground for that plea. The State's answer is that the trial court had no duty to advise the defendant of all possible pleas and that the given admonition satisfied Rule 402 and due process.

The defendant's argument is not persuasive. The court admonished the defendant on the nature of the charges, the constitutional rights waived by a plea of guilty, and the sentences that could be imposed. The prosecution stated that it intended to seek the death penalty, and the court determined that no threats or promises were made to Walker in exchange for his plea. In addition, the court asked Walker if he was "under any addiction at this time for drugs or alcohol." The defendant replied, "No." Moreover, Walker had not yet presented any claim that he was dependent on alcohol, or that his dependence might be claimed as a basis for a plea of guilty but mentally ill. The court had not been given any reason to believe that a plea of guilty but mentally ill could be suggested and had no duty to admonish the defendant that there was that plea.

In People v. Stewart (1984), 101 Ill. 2d 470, the defendant argued that the trial judge improperly denied his request that a mental examination be ordered and the results of it included in the presentence report. We said that, among other reasons, a mental examination might be relevant in a death penalty hearing to determine whether there existed a statutory mitigating factor of extreme mental disturbance. However, this court held that there must be some indication that the defendant's mental condition was at issue before it can be said the court abused discretion in refusing to order an examination. (101 Ill. 2d 470, 490.) What we held is applicable to

this defendant's argument. It certainly would be inconsistent here to hold that the court had a duty to admonish Walker that there was a plea of guilty based on mental illness when he not only did not offer any evidence that such a plea might be warranted, but specifically denied to the court that he suffered from a dependence on alcohol, the ground upon which he now submits his plea of guilty but mentally ill would rest.

In a related argument Walker says that the trial court erred in denying his motion to withdraw his guilty plea and substitute for it a plea of guilty but mentally ill. Walker contends that the court erroneously treated his motion as if it were a motion to withdraw a guilty plea and proceed to trial on the merits. Walker states that the procedure to be followed when a defendant wishes to substitute a plea of guilty but mentally ill for a guilty plea is found in section 115—2(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 115—2(b)), which section guides a trial court in determining whether initially to accept a plea of guilty but mentally ill. Section 115—2(b) provides:

"(b) *Before or during trial* a plea of guilty but mentally ill may be accepted by the court when:

(1) the defendant has undergone an examination by a clinical psychologist or psychiatrist and has waived his right to trial; and

(2) the judge has examined the psychiatric or psychological report or reports; and

(3) the judge has held a hearing, at which either party may present evidence, on the issue of the defendant's mental health and, at the conclusion of such hearing, is satisfied that there is a factual basis that the defendant was mentally ill at the time of the offense to which the plea is entered." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 38, par. 115—2(b).

Walker's motion to withdraw the guilty plea was brought after judgment had been entered. The provi-

sions of section 115—2(b) are applicable before or during trial, and the trial court did not err in denying the motion.

On a post-trial motion, on the other hand, a trial court has the discretion to decide whether to allow the defendant to withdraw, or change, the plea that was entered. 87 Ill. 2d R. 604(d); *People v. Hale* (1980), 82 Ill. 2d 172.

We cannot say, however, that the court abused discretion in the ruling on the post-trial motion. Extensive testimony was presented on the defendant's drinking habits and the effect of alcohol on him. A clinical psychologist, Dr. Daniel Cuneo, who examined Walker at the request of defense counsel, testified during the mitigation phase that Walker was an alcoholic whose dependence on alcohol was sufficient to have a serious, adverse effect on his behavior and personality. The witness testified that Walker drank just before committing every one of his criminal acts and said that the prior convictions were attributable in large part to his alcohol abuse. He stated that it was his opinion that the alcohol consumed by Walker on the day of the murders affected his judgment and behavior to the extent that, though not insane, Walker was at the time suffering from a severe emotional disturbance. Dr. Cuneo's report was made part of the record as an appendix to Walker's post-trial motion to withdraw the guilty plea.

The court also heard evidence of the factual basis which Walker says supports his argument that his alcoholism constituted a mental illness at the time of the murders. The testimony of Douglas Phillips and Richard Jones tended to show that Walker had been drinking throughout June 18, the day of the murders, but they said he did not appear to be intoxicated. Walker's girlfriend, Ramona Daugherty, and his half-sister, Lila Docherty, testified that although Walker was normally a

gentle person, he became combative and violent when drinking. This testimony was corroborated by the testimony of Debra DeWitt, a Fayetteville police officer, who said Walker was always drinking when she saw him and that, when drinking, he displayed violent behavior. In sum, Walker was substantially given the same opportunity to present evidence, in support of his motion, that he was mentally ill at the time of the offenses as he would have been allowed under section 115—2(b). The court rejected the defendant's contention of a mental illness when it denied his motion to withdraw the plea and, considering the whole record, we cannot say the ruling was an abuse of discretion.

Relating to the foregoing contentions, the defendant complains that he was denied the effective assistance of counsel because his attorney did not advise him there is a plea of guilty but mentally ill and, secondly, because his counsel did not raise the issue of an erroneous admonition in the post-trial motion to withdraw the plea of guilty. Constitutionally assured assistance of counsel has not been provided if a defendant can show that the performance of counsel did not meet an objective standard of reasonable competence and that the deficiencies were sufficiently serious to establish a reasonable probability that, but for counsel's professional inadequacy, the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 525.) The Supreme Court, however, has stated that this standard will not be mechanically applied: "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strick-*

*land v. Washington* (1984), 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069-70; *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 426-27.) We have concluded that the allegations which Walker submits as the foundation for his claim of ineffective assistance of counsel did not operate to his prejudice. It cannot be said that, had counsel advised the defendant that there is a guilty but mentally ill plea or had raised the issue of an inaccurate admonition in a post-trial motion, the result at trial would have been different.

Walker complains of unfairness in his sentencing hearing because of evidence which the defendant says the prosecution introduced only for the purpose of inflaming the jury, thereby preventing a reasoned determination of a proper sentence. The defendant, however, failed to object at the sentencing hearing to the evidence he now complains of and did not include it as an issue in his post-trial motion. Claimed errors not properly preserved are, of course, considered waived. (87 Ill. 2d R. 604(d).) It is true that the plain-error rule will be applied where the evidence is closely balanced or the error alleged is of such gravity as to deny a fair trial *(People v. Gacy* (1984) 103 Ill. 2d 1, 28; *People v. Szabo* (1983), 94 Ill. 2d 327, 354-55), but neither requirement is present here.

Walker's argument is that the prosecution improperly introduced evidence of the armed robbery at the Runway Lounge during the eligibility-for-the-death-penalty phase of his sentencing hearing. He also says that the testimony of Sheriff Justus during that phase that Walker did not express any remorse for the murders during the return trip from Colorado was improper in that this evidence, and that concerning the armed robbery, were not probative of any element needed to establish that Walker was eligible for the death penalty. In the qualification or eligibility phase the jury, under the statute, is presented

with the narrow questions of whether the defendant is 18 years of age or older at the time of the murder and whether a statutory aggravating factor exists. (*People v. Mack* (1984), 105 Ill. 2d 103, 125.) Walker was 43 years old on the day of the murders, and the record reveals that two aggravating factors, the murder of more than one person and murder committed during the course of a forcible felony, were established by overwhelming evidence, including the defendant's confession. We do not consider that the references made constitute sufficiently serious ground to ignore the waiver of objection and apply the plain-error rule. 105 Ill. 2d 103, 125.

Walker's other argument on this point is that the prosecution during argument said "[defense counsel] keeps telling you about [life imprisonment]. * * * [R]ead your jury instructions. Nowhere in that jury instruction does it read life imprisonment." During the mitigation phase of the hearing the defendant, in response to a question of the prosecutor, had said that he believed that the minimum sentence for murder was 20 years. The defendant contends from this that the prosecutor was arguing that the defendant could receive a sentence of only 20 years, whereas the defendant, as discussed earlier, argues that under *Taylor* the imposition of a life sentence was required. Here, too, there is not sufficient, if any, ground shown to ignore the failure of the defendant to object and to apply the plain-error rule.

Finally, Walker argues the prosecutor presented evidence of personal traits of the victims to incite the jurors and prejudice their deliberations. Personal traits of victims are not relevant to the question of guilt or innocence or to the question of the proper sentence to be imposed. (*People v. Bernette* (1964), 30 Ill. 2d 359.) Denise Winker, Sharon's sister, testified that Sharon had majored in child education and had taught at a day-care center. The witness said that Sharon was engaged to

Kevin Paule. Hugo Paule, Kevin's grandfather, testified that Kevin had been in the armed forces and had never been in trouble with the police. A more liberal position on evidence, which gives the State and defendant more latitude in presenting relevant information, governs the second phase of a sentencing hearing. (*People v. Free* (1983), 94 Ill. 2d 378, 422.) In particular, we have held that introduction in the second phase of a sentencing hearing of evidence of a victim's personal characteristics does not constitute grounds for invoking the plain-error rule when the improper evidence is not objected to or raised in a post-trial motion. *People v. Mack* (1985), 105 Ill. 2d 103, 126; *People v. Free* (1983), 94 Ill. 2d 378, 422.

Walker says the imposition of the death penalty is inappropriate and excessive in light of the evidence offered in mitigation. In considering petitions to vacate a sentence of death, this court must be mindful of the limitations of its authority: "Our responsibilities *** neither require nor permit reversal where no reasonable doubt of guilt exists, no reversible error has occurred, and there is no indication that the jury imposed the penalty on other than a reasoned basis." (*People v. Lewis* (1981), 88 Ill. 2d 129, 165; *People v. Caballero* (1984), 102 Ill. 2d 23, 46.) The evidence was that the defendant, with careful deliberation, shot the victims during an armed robbery and while their hands were bound and they were helpless. Later that night, Walker shot at Richard Jones, who was trying to prevent Walker's escape after the defendant had robbed Jones in his tavern. These were not the defendant's first crimes. He had two prior convictions for burglary, one for attempted murder, and one for armed robbery.

Walker cites the evidence of alcohol dependence as a mitigating factor showing severe mental disturbance. That Walker was under a mental disturbance at the time

of the murders, however, was contradicted by the testimony of Douglas Phillips and Richard Jones, both of whom saw the defendant at various times that day. Their testimony was that Walker appeared to be in full control of his faculties. Under similar circumstances this court declined to vacate the death penalties imposed in *People v. Free* (1983), 94 Ill. 2d 378, and *People v. Madej* (1985), 106 Ill. 2d 201, where there was evidence that the defendants had taken significant amounts of drugs and alcohol before the commission of crimes. Considering the vicious nature of the murders and the defendant's willingness to kill Jones, there are not grounds to disturb the verdict of the jury. It cannot be said that the sentence was imposed on other than a reasoned basis.

The defendant challenges the constitutionality of the death penalty statute, but on grounds which have already been considered and rejected by this court. In *People v. Stewart* (1984), 104 Ill. 2d 463, 493-94, we upheld, under the eighth and fourteenth amendments, a jury instruction which directed the jury not to be governed by sympathy in its deliberations. (Illinois Pattern Jury Instructions (IPI), Criminal, No. 1.01(5) (2d ed. 1981).) The contention the defendant makes here is that the instruction prevented the jury from considering evidence of his alcohol dependency as a factor in mitigation. That, however, is unfounded because the jury was also instructed to consider "any other facts or circumstances that provide reasons for imposing less than the most severe sentence." (IPI Criminal 2d No. 7A.15.) The jury was thus directed to consider the evidence of Walker's dependency on alcohol, as well as any other evidence offered in mitigation, and nothing in this record persuades us to substitute our judgment for that of the jury. (*People v. Caballero* (1984), 102 Ill. 2d 23, 46.) Too, Walker, as well as defense counsel, made two separate appeals in argument to the jury's sense of mercy, which rebuts the defend-

ant's claim that he was denied opportunity to have the jury persuaded against imposing the death penalty. *People v. Stewart* (1984), 104 Ill. 2d 463, 494.

Similarly, Walker's argument that the death penalty statute is unconstitutional because it requires an emotional disturbance to be "extreme" before it may be considered as a factor in mitigation was rejected in *People v. Madej* (1985), 106 Ill. 2d 201, 222. The jury, as we have noted, was instructed to consider all evidence in mitigation. It appears that the jury simply did not accept the defendant's contention in mitigation.

The argument that our statute vests unguided discretionary authority in the prosecutor was dismissed in *People v. Stewart* (1984), 105 Ill. 2d 22, 75, *People v. Silagy* (1984), 101 Ill. 2d 147, 161, *People v. Davis* (1983), 95 Ill. 2d 1, 28, *People v. Szabo* (1983), 94 Ill. 2d 327, 351, and *People ex rel. Carey v. Cousins* (1979), 77 Ill. 2d 531. The defendant's claim that the statute is invalid under the eighth and fourteenth amendments because it fails to establish an adequate procedure to allow a comparative review of those cases in which the death penalty is imposed is untenable. The contention was rejected in *Pulley v. Harris* (1984), 465 U.S. 37, 79 L. Ed. 2d 29, 104 S. Ct. 871, and in *People v. Stewart* (1984), 104 Ill. 2d 463, 499, *People v. Silagy* (1984), 101 Ill. 2d 147, 161, *People v. Williams* (1983), 97 Ill. 2d 252, 266, and *People v. Kubat* (1983), 94 Ill. 2d 437, 502-04.

Walker also argues that the statute is unconstitutional because the sentencing jury was not required to make a specific finding that death was the appropriate sentence, but had only to determine if the factors in mitigation were sufficient to preclude the imposition of that sentence. We have held, however, that in the statutory scheme there is the requirement that a jury carefully weigh all the factors "in order to reach a fair and just result, one that is based on the particular circumstances

of the offense and the defendant." *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 446, quoting *People v. Brownell* (1980), 79 Ill. 2d 508, 538.

Finally, this court has held, contrary to the defendant's complaint, that the death penalty statute clearly does not make English-speaking defendants subject to the death penalty while exempting defendants unable to speak English who, under section 104—22 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 104—22), require assistance to understand the trial proceeding. *People v. Stewart* (1984), 104 Ill. 2d 463, 499-502.

For the reasons given, the judgment of the circuit court of St. Clair County is affirmed. The clerk is ordered to enter an order setting Wednesday, the 28th day of May, 1986, as the date on which the sentence of death, entered by the circuit court of St. Clair County, shall be carried out. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 119—5). A certified copy of the mandate in this case shall be furnished by the clerk of this court to the Director of Corrections, to the warden at Stateville Correctional Center, and to the warden of the institution wherein the defendant is confined.

*Judgment affirmed.*

JUSTICE SIMON, concurring in part and dissenting in part:

I dissent from the court's decision to uphold the death sentence imposed in this case because the sentencing process was flawed by evidence elicited by the State which improperly appealed to the emotions of the jurors.

Firmly entrenched in the jurisprudence of this court is the proposition that a criminal defendant's guilt and the punishment to be exacted must be determined by a

jury "uninfluenced by bias or prejudice." (*People v. Bernette* (1964), 30 Ill. 2d 359, 371; *People v. Holman* (1984), 103 Ill. 2d 133; *People v. Ramirez* (1983), 98 Ill. 2d 439; *People v. Gill* (1973), 54 Ill. 2d 357; *Filippo v. People* (1906), 224 Ill. 212.) Applying this rule, the court has repeatedly reversed convictions or vacated sentences where the prosecution, either by adducing improper evidence or by making emotional appeals in argument, has drawn the jury's attention to the personal characteristics and relationships of the victim. (*People v. Holman* (1984), 103 Ill. 2d 133; *People v. Ramirez* (1983), 98 Ill. 2d 439; *People v. Davis* (1983), 97 Ill. 2d 1; *People v. Bernette* (1964), 30 Ill. 2d 359; *People v. Gregory* (1961), 22 Ill. 2d 601; *People v. Dukes* (1957), 12 Ill. 2d 334; *Filippo v. People* (1906), 224 Ill. 212.) The court's action in these cases was grounded in the recognition that " 'such evidence has no relationship to the guilt or innocence of the accused or the punishment to be inflicted upon him' ***" (*People v. Holman* (1984), 103 Ill. 2d 133, 166, quoting *People v. Bernette* (1964), 30 Ill. 2d 359, 371), but serves only to "arouse in [the jurors] anger, hate and passion" against him (*People v. Dukes* (1957), 12 Ill. 2d 334, 340).

Of course, not every mention of the personal characteristics of the victim triggers a response by this court; where such testimony is "elicited incidentally" no prejudice arises. (*People v. Ramirez* (1983), 98 Ill. 2d 439, 453.) However, when testimony on the personal situation of the victim is "presented in such a way as to give the jury to understand that it was *** material," such evidence is highly prejudicial. (*Filippo v. People* (1906), 224 Ill. 212, 217; *People v. Dukes* (1957), 12 Ill. 2d 334, 340.) This court has frequently inferred from the nature of the evidence that the prosecution *intended* only to inflame the jury. See, *e.g., People v. Ramirez* (1983), 98 Ill. 2d 439; *Filippo v. People* (1906), 224 Ill. 212.

Here the State called two witnesses during the second stage of the sentencing hearing. The first, the sister of the victim Winker, testified to the victim's age, education, the fact that Winker was engaged to the victim Paule, the wedding date, Winker's lack of a criminal record, and her interest in reading and Sunday school. The second witness was the grandfather of the other victim. He testified to Paule's age, employment, education, the fact that he was to be married to Winker, and the fact that the victim had never been in trouble.

The majority apparently believes that the "more liberal position" on evidence at the sentencing hearing justifies the introduction of this evidence. (109 Ill. 2d at 506.) I do not agree. No matter how broad the relevance standard applied, the testimony here cannot pass muster. The background of the victims and their relationship was singularly irrelevant to any issue at the sentencing hearing; the only issue at the second stage of the hearing is the existence of factors in mitigation and aggravation. The fact that the victims were youthful, law-abiding members of the community and were to be married could have no relevance to that issue unless the court is willing to take the position that murder is more heinous when perpetrated against an upstanding member of the community, and thus the character of the victim is a factor in aggravation. Such a principle, however, would offend our most basic notions of equality and justice.

The obvious purpose for which the prosecution called these witnesses was to play upon the jurors' emotions in viewing the tragic deaths of the young victims. There can be no claim here that the testimony was "incidental," inasmuch as the victims' family members were the only witnesses called at the second stage and their testimony related to nothing but the victims' characters. The jury could not have helped but believe that the victims' characters were material to deciding whether the death

penalty should be imposed.

Despite the highly prejudicial nature of the evidence, the majority refuses to consider the error because it was not objected to at trial. As the majority sees it, this testimony did not constitute plain error "affecting substantial rights." (See 87 Ill. 2d R. 615(a).) In my view, there can be few, if any, rights more substantial than the right of one in jeopardy of his life to a sentencing jury uninfluenced by partiality and prejudice. Moreover, the majority's citation of two cases refusing to employ the plain-error rule in this context, while accurate, is also selective. This court has also twice held recently that the propriety of evidence or argument at the sentencing hearing relating to the victim's family can be considered under the plain-error rule. (*People v. Holman* (1984), 103 Ill. 2d 133, 176-77; *People v. Davis* (1983), 97 Ill. 2d 1, 26-27; see also *People v. Bernette* (1964), 30 Ill. 2d 359, 372; *People v. Szabo* (1983), 94 Ill. 2d 327, 354-55, 363-65.) In *Holman*, the court explained that this type of error should be considered notwithstanding the defendant's failure to object "because of the qualitative difference between death and other forms of punishment and the ' "high standard of procedural accuracy [that] is required in determining whether or not [the death] penalty will be imposed." ' " (*People v. Holman* (1984), 103 Ill. 2d 133, 177, quoting *People v. Davis* (1983), 97 Ill. 2d 1, 26-27, and *People v. Walker* (1982), 91 Ill. 2d 502, 517.) Similarly, in *People v. Davis* (1983), 97 Ill. 2d 1, 27, the court considered the argument despite the fact that no objection was made because the possibility that the jury might have been influenced at the first stage of the sentencing hearing by prejudicial evidence "should not be tolerated." And in the watershed case of *Bernette*, this court overturned a conviction and death sentence, even without objection to the evidence, on the ground that "the irrelevancy and highly prejudicial nature of such evidence

is so well established, that it was the duty of the court in a murder case to have refused it on its own motion." 30 Ill. 2d 359, 372.

I would note that, apart from the consequence that prejudicial error is overlooked, the uneven application of the plain-error rule in circumstances virtually indistinguishable gives our decisions an unpredictable quality which should not be tolerated in a system of equal justice, especially in view of the fact that we are considering the imposition of a death sentence. In addition, it encourages prosecutors to attempt to get by with what they can when they think defense counsel may overlook it. It appears to me that we have been giving inconsistent signals to prosecutors on the propriety of tactics such as those used during the sentencing hearing here and that this would be a good case to try to clarify the standards to be used.

Finally, for the reasons set forth in my separate opinions in *People v. Lewis* (1981), 88 Ill. 2d 129, 179 (Simon, J., dissenting), in *People v. Silagy* (1984), 101 Ill. 2d 147, 184 (Simon, J., concurring in part and dissenting in part), and in *People v. Albanese* (1984), 104 Ill. 2d 504, 549 (Simon, J., concurring in part and dissenting in part), I believe that the Illinois death penalty statute is unconstitutional and that therefore no sentence imposed under that statute can stand. For these reasons, I think the sentence of death imposed on defendant should be vacated.