Everett NOWACK, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 87–74.

Supreme Court of Wyoming.

May 9, 1989.

Wyoming Public Defender Program, Leonard D. Munker, State Public Defender, Julie D. Naylor, Appellate Counsel, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Terry L. Armitage, Asst. Atty. Gen., Cheyenne, for appellee.

Before CARDINE, C.J., THOMAS, URBIGKIT, and MACY, JJ. and O'BRIEN, District Judge.

O'BRIEN, District Judge.

On June 5, 1986, while drunk, Everett Nowack operated a vehicle on the streets of Casper, Wyoming. He drove across the median of Poplar Street and ran head-on into another vehicle. That collision resulted in serious injuries to one of the occupants of the other vehicle. For his acts he was criminally charged.

On October 30, 1986, he pled guilty in Natrona County Court to causing serious bodily injury to another as a result of driving while under the influence of intoxicating liquor, in violation of § 31–5–233(a) and

(g), W.S. 1977 (hereafter "injury-producing D.W.U.I."). On January 16, 1987, he was found guilty in District Court of aggravated assault and battery in violation of § 6–2–502, W.S. 1977. Both the guilty plea and the later conviction were based upon the events of June 5, 1986. This appeal comes from the aggravated assault and battery conviction.

We are called upon to decide:

(1) Whether the existence of the injury-producing D.W.U.I. statute precludes the state from charging aggravated assault and battery when serious bodily injury results from an alcohol related vehicular accident, and

(2) Whether the double jeopardy clause of the United States or the Wyoming Constitution bars prosecution of the defendant for aggravated assault and battery after he has plead guilty to injury-producing D.W.U.I. for the same incident.

The district court held that the State was not constrained from prosecuting the aggravated assault and battery. For the reasons stated below, the judgment of the district court is affirmed.

On June 30, 1986, Nowack was charged in Natrona County Court with three criminal counts: first, causing serious bodily injury to another resulting from driving under the influence in violation of § 31–5–233(a) and (g), W.S. 1977; second, operating a motor vehicle without liability insurance in violation of § 31–4–103(a), W.S.1977; and third, aggravated assault and battery in violation of § 6–2–502(a)(i), W.S.1977. The first two counts are misdemeanors; the third is a felony.

Upon motion by the State the two misdemeanors were dismissed on July 22, 1986, but the felony went to preliminary hearing. Following the preliminary hearing on July 28, 1986, Nowack was bound over for trial in the district court on the charge of aggravated assault and battery. After the preliminary hearing, and for reasons not disclosed in the record, the misdemeanors, earlier dismissed at the State's request, were refiled and Nowack pled guilty to both. He was sentenced by the county court for those offenses on October 30, 1986. Then, on November 18, 1986, he moved in district court to dismiss the aggravated assault and battery charge. In considering his motion the district judge said:[1] "One problem with the argument of defendant is that it would reach an absurd result, whereby a person who was drunk and driving recklessly, resulting in serious bodily injury, would be guilty only of a misdemeanor, while a sober reckless driver causing serious bodily injury would be guilty of a felony." The motion was denied and the defendant was later found guilty after a bench trial.

The first issue raised by appellant is whether the State can charge him with a felony, aggravated assault and battery,[2] arising from a vehicular accident involving both reckless and drunken driving. He argues that the State must charge him with the statute which, in his view, specifically (and therefore exclusively) covers that conduct, to-wit § 31–5–233, W.S.1977, driving or having control of a vehicle while under the influence of intoxicating liquor or controlled substances.[3]

---

1. Judge Spangler heard and decided the motions. Judge Leimbeck conducted the trial.

2. In relevant part, § 6–2–502, W.S. 1977 provides:

(a) A person is guilty of aggravated assault and battery if he:

(i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; ...

(b) Aggravated assault and battery is a felony punishable by imprisonment for not more than ten years.

3. In relevant part, § 31–5–233, W.S.1977 provides:

(a) It is unlawful for any person who is under the influence of intoxicating liquor, to a degree which renders him incapable of safely driving a motor vehicle, to drive or have actual physical control of any vehicle within this state.

\* \* \* \* \* \*

(g) As used in this subsection, "serious bodily injury" means bodily injury which creates a reasonable likelihood of death or which causes miscarriage or serious permanent disfigurement or protracted loss or impairment of any bodily member or organ. Whoever causes serious bodily injury to another person resulting from

■ The United States Supreme Court has considered the circumstance of two statutes providing different penalties for identical criminal conduct. *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). The Court was called upon to construe conflicting penalty provisions of the Omnibus Crime Control and Safe Streets Act of 1968. In writing for a unanimous court Justice Marshall said [at 118, 99 S.Ct. at 2201], "As we read the Act, each substantive statute, in conjunction with its own sentencing provision, operates independently of the other." The Court went on to say [at 122–124, 99 S.Ct. at 2203–04]:

In resolving the statutory question, the majority below expressed "serious doubts about the constitutionality of two statutes that provide penalties for identical conduct." [*U.S. v. Batchelder*], 581 F.2d, [626] at 633–634 [ (7th Cir.1978) ] (footnote omitted). Specifically, the court suggested that the statutes might (1) be void for vagueness, (2) implicate "due process and equal protection interest[s] in avoiding excessive prosecutorial discretion and in obtaining equal justice," and (3) constitute an impermissible delegation of congressional authority. Id., at 631–633. We find no constitutional infirmities.

\* \* \* \* \* \*

It is a fundamental tenet of due process that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." [citation omitted] A criminal statute is therefore invalid if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." [citations omitted] So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute. [citations omitted]

The provisions in issue here, however, unambiguously specify the activity pro-

scribed and the penalties available upon conviction. See *supra* 442 U.S. at 119, 99 S.Ct. at 2201–02, 60 L.Ed.2d, at 761–762. That this particular conduct may violate both Titles does not detract from the notice afforded by each. Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments. So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.

\* \* \* \* \* \*

This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants. [citations omitted]

The same issue was presented to this Court with the same result. *Kallas v. State*, 704 P.2d 693 (Wyo.1985). In *Kallas* the defendant, who was the father of the victim, was charged with second degree sexual assault, § 6–2–303(a)(v), W.S.1977. On appeal he argued that he should have been charged under the incest statute, § 6–4–402, W.S.1977, which carried a much more lenient sentence. In resolving the issues contrary to his contentions this Court relied upon *United States v. Batchelder*. After *Kallas* it would seem that the issue had been adequately put to rest. However, like a phoenix, it continues to resurrect itself. In *Bueno–Hernandez v. State*, 724 P.2d 1132, 1139 (Wyo.1986) the defendant was convicted of attempted second degree sexual assault under §§ 6–2–303(a) and 6–1–301(a), W.S.1977. He argued that he should have been charged with fourth degree sexual assault, § 6–2–305, W.S.1977, or indecent liberties with a minor, § 14–3–105, W.S.1977. This Court again held that absent discriminatory prosecution, the State may charge any of-

---

the violation of this section shall be punished upon conviction as follows:

(i) ... by a fine of not more than five thousand dollars ($5,000.00), imprisonment for not more than one (1) year, or both; ....

fense it can prove. In spite of those holdings, and for the third time in recent years we are again presented with the same argument. We will now conclusively deal with the issue.

Nowack suggests several rules of statutory construction to support his position. He argues that statutes on the same subject must be construed together to promote consistency and harmony, *Capwell v. State*, 686 P.2d 1148 (Wyo.1984) and, presuming that the legislature does not intend futile acts, that statutes must be construed so as to give meaning to each and nullify neither. *Sodergren v. State*, 715 P.2d 170 (Wyo.1986); *Attletweedt v. State*, 684 P.2d 812 (Wyo.1984); *Haddenham v. City of Laramie*, 648 P.2d 551 (Wyo.1982); *McGuire v. McGuire*, 608 P.2d 1278 (Wyo. 1980). We recognize the validity of those accepted rules of statutory construction, but fail to see their relevance to the issue presented. The thrust of the argument appears to be that consideration of the two statutes creates an ambiguity which should be resolved in favor of lenity.[4] But, "[l]enity thus serves only as an aid for resolving an ambiguity; it is not to be used to beget one. The rule comes into operation 'at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers.' " *Albernaz v. United States*, 450 U.S. 333, 342, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981). We see no ambiguity either in the proscriptions of the statutes or in the punishments provided. *Id.* at 336, 101 S.Ct. at 1141. Stripped of rhetorical gloss Appellant's argument distills to his claim that the injury-producing D.W.U.I. statute is specific and must be applied in this circumstance to the exclusion of the more general aggravated assault and battery statute.

---

**4.** The argument is not new and was specifically addressed in *United States v. Batchelder*, 442 U.S. at 121–122, 99 S.Ct. at 2203, where the Court said:

> In construing § 1202(a) to override the penalties authorized by § 924(a), the Court of Appeals relied, we believe erroneously, on three principles of statutory interpretation. First, the court invoked the well-established doctrine that ambiguities in criminal statutes must be resolved in favor of lenity. E.g., *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971); *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971); *United States v. Culbert*, 435 U.S. 371, 379, 98 S.Ct. 1112, 1116, 55 L.Ed.2d 349 (1978); *United States v. Naftalin*, 441 U.S. 768, 778–779, 99 S.Ct. 2077, 2084, 60 L.Ed.2d 624 (1979); *Dunn v. United States*, 442 U.S. 100, 112–113, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979). Although this principle of construction applies to sentencing as well as substantive provisions, see *Simpson v. United States*, 435 U.S. 6, 14–15, 98 S.Ct. 909, 913–14, 55 L.Ed.2d 70 (1978), in the instant case there is no ambiguity to resolve. Respondent unquestionably violated § 922(h), and § 924(a) unquestionably permits five years' imprisonment for such a violation. That § 1202(a) provides different penalties for essentially the same conduct is no justification for taking liberties with unequivocal statutory language. See *Barrett v. United States*, 423 U.S. 212, 217, 96 S.Ct. 498, 501, 46 L.Ed.2d 450 (1976). By its express terms, § 1202(a) limits its penalty scheme exclusively to convictions obtained under that provi-

> sion. Where, as here, "Congress has conveyed its purpose clearly, ... we decline to manufacture ambiguity where none exists." *United States v. Culbert, supra*, 435 U.S. 371, 379, 98 S.Ct. 1112, 1116, 55 L.Ed.2d 349.

> Nor can § 1202(a) be interpreted as implicitly repealing § 924(a) whenever a defendant's conduct might violate both Titles. For it is "not enough to show that the two statutes produce differing results when applied to the same factual situation." *Radzanower v. Touche Ross & Co., et al*, 426 U.S. 148, 155, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976). Rather, the legislative intent to repeal must be manifest in the " 'positive repugnancy between the provisions.' " *United States v. Borden Co.*, 308 U.S. 188, 199, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939). In this case, however, the penalty provisions are fully capable of coexisting because they apply to convictions under different statutes.

> Finally, the maxim that statutes should be construed to avoid constitutional questions offers no assistance here. This " 'cardinal principle' of statutory construction ... is appropriate only when [an alternative interpretation] is 'fairly possible' " from the language of the statute. *Swain v. Pressley*, 430 U.S. 372, 378 n. 11, 97 S.Ct. 1224, 1228 n. 11, 51 L.Ed.2d 411 (1977); see *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 297, 76 L.Ed. 598 (1932); *United States v. Sullivan*, 332 U.S. 689, 693, 68 S.Ct. 331, 334, 92 L.Ed. 297 (1948); *Shapiro v. United States*, 335 U.S. 1, 31, 68 S.Ct. 1375, 1391, 92 L.Ed. 1787 (1948). We simply are unable to discern any basis in the Omnibus Act for reading the term "five" in § 924(a) to mean "two."

In dealing with a similar argument about various statutes which address sexual misconduct, *Kallas v. State,* 704 P.2d at 693, we said [at 695]:

All three statutes (sexual assault, indecent liberties with a minor, and incest) concern sexual activities, but one cannot be said to be more specific than the other. The thrust of the second-degree sexual-assault statute and of the indecent-liberties-with-a-minor statute is age. They are more specific in this respect than is the incest statute. The thrust of the incest statute is family relationship. It is more specific in this respect than are the second-degree sexual-assault statute and the indecent-liberties-with-a-minor statute. There is overlap of elements among them, but the elements of the several offenses are not identical. Furthermore, *United States v. Batchelder, supra,* [442 U.S. at 121, 99 S.Ct. at 2203] would permit the choice of charges by the prosecutor even if the elements of these offenses were identical.

So it is here, as well. The injury-producing D.W.U.I. statute is specific in that it deals with drunk driving, but the aggravated assault and battery statute is specific in dealing with the level of culpability involved in the conduct it proscribes and punishes, *viz.* acts done "recklessly under circumstances manifesting extreme indifference to the value of human life." § 6–2–502(a)(i), W.S. 1977. While we point to the differences in the statutes and observe that those rational distinctions blunt Appellant's arguments, we hew to our holding that such a difference is an unnecessary predicate to prosecution under either statute.

Appellant relies on a line of cases which discussed the relationship of the manslaughter statute, § 6–4–107, W.S.1977, and the vehicular homicide statute, § 31–5–1117, W.S.1977, *Sodergren v. State,* 715 P.2d 170 (Wyo.1986); *State v.*

*Sodergren,* 686 P.2d 521 (Wyo.1984); *Lopez v. State,* 586 P.2d 157 (Wyo.1978); *Bartlett v. State,* 569 P.2d 1235 (Wyo. 1977); *Thomas v. State,* 562 P.2d 1287 (Wyo.1977). Those cases have little effect upon the statutes, which have since been revised, but they contain language which seems to confound the issue presented here and may continue to be problematic. Indeed, those cases are central to the arguments advanced in other cases urging judicial restraint of prosecutorial discretion. *Lopez, Bartlett,* and *Thomas* were all decided before *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. at 2199, and announced principles which are now at odds with the holding of the United States Supreme Court in that case and contrary to our holding in *Kallas v. State,* 704 P.2d 693 and *Bueno–Hernandez v. State,* 724 P.2d at 1140. To the extent of that conflict, *Lopez, Bartlett* and *Thomas* are overruled. The fact that two statutes may provide different penalties for the same proscribed conduct does not constrain prosecution under either statute.[5] But our inquiry does not end there. Because Nowack was sentenced under both statutes, another issue is presented.

Nowack argues that constitutional guarantees against double jeopardy were violated when the same misconduct was the basis for two convictions and two sentences under different statutes. The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The double jeopardy clause of the Fifth Amendment is made applicable to the states through the Fourteenth Amendment to the United States Constitution. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969); *Schultz v. State,* 751 P.2d 367, 369 (Wyo.1988). The parallel provision of the Wyoming Constitution (Art. 1, § 11) provides that "[N]or

**5.** The *Sodergren* cases are, at most, marginally relevant to the issues presented here. They dealt with internal inconsistencies in the vehicular homicide statute. Aside from the fact that neither opinion gathered a majority of the Court, those cases turned upon construction of a statute which has since been repealed; they offer little to inform this debate. Appellant also argues that *Capwell v. State,* 686 P.2d 1148, supports his position, but we have previously distinguished that case from circumstances such as those presented here. *Bueno–Hernandez v. State,* 724 P.2d at 1140.

shall any person be twice put in jeopardy for the same offense." Both constitutions protect the same interests and the meaning of the two provisions is the same, *Vigil v. State*, 563 P.2d 1344, 1350 (Wyo.1977), but the issues have been more roundly debated in the federal decisions. Because of the redundancy of constitutional protections and the more prolific writing of the federal courts we rely heavily upon federal law.

Both the Federal and State constitutional provisions respecting double jeopardy protect three interests: They prohibit a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction, and, finally, multiple punishments for the same offense.[6] *Garrett v. United States*, 471 U.S. 773, 777, 105 S.Ct. 2407, 2410, 85 L.Ed.2d 764, reh. denied 473 U.S. 927, 106 S.Ct. 20, 87 L.Ed.2d 698 (1985); *Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *Lauthern v. State*, 769 P.2d 350 (Wyo.1989); *Birr v. State*, 744 P.2d 1117, 1119 (Wyo.1987); *Schultz v. State*, 751 P.2d 367 (Wyo.1988); *Tuggle v. State*, 733 P.2d 610 (Wyo.1987). We are concerned with the second of the three protections, freedom from a second prosecution for the same offense after conviction.

> The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is

that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. *Green v. United States*, 355 U.S. 184, 187–188, 2 L.Ed.2d 199, 78 S.Ct. 221 [223–224], 61 ALR2d 1119 (1957).

Expanding on that theme it has been argued that the government is obligated "to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction." *Ashe v. Swenson*, 397 U.S. 436, 453–454, 90 S.Ct. 1189, 1199–1200, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). But that was not the view of the majority, a point emphatically driven home by Justice Harlan, *ibid.* at 448, 90 S.Ct. at 1196, and that notion has been subsequently rejected. In *Garrett v. United States*, 471 U.S. at 790, 105 S.Ct. at 2417, the Court said: "We have steadfastly refused to adopt the 'single transaction' view of the Double Jeopardy Clause." So it is in Wyoming, as well. *State v. Carter*, 714 P.2d 1217, 1220 (Wyo. 1986). Within limits set by the legislature the State may chose how and when it will charge different offenses arising from the same incident, but it may try the same offense only once.

◼ The first step in the inquiry, then, is to decide whether the legislature intended to permit punishment under both statutes upon a single act or event.[7] If we conclude

---

**6.** In her concurring opinion in *Garrett v. United States*, 471 U.S. at 796, 105 S.Ct. at 2420, Justice O'Connor observed:

> Decisions by this Court have consistently recognized that the finality guaranteed by the Double Jeopardy Clause is not absolute, but instead must accommodate the societal interest in prosecuting and convicting those who violate the law. [citations] The Court accordingly has held that a defendant who successfully appeals a conviction generally is subject to retrial. [citation] Similarly, double jeopardy poses no bar to another trial where a judge declares a mistrial because of "manifest necessity." [citation] Such decisions indicate

that absent "governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect," [citation] the compelling public interest in punishing crimes can outweigh the interest of the defendant in having his culpability conclusively resolved in one proceeding. [citation]

**7.** In *Garrett v. United States*, 471 U.S. at 778, 105 S.Ct. at 2411 the Court said:

> Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature—in this case Congress—intended that each violation be a separate offense. If

that the legislature intended multiple punishments we must then decide whether the State could subject the defendant to multiple trials consistent with the double jeopardy provisions of the State and Federal Constitutions.

In attempting to discern legislative intent we start with the plain wording of the statutes. With respect to these statutes there is no clear statement that the legislature intended cumulative punishments. However, we are aided by a rule of statutory construction. "The presumption when Congress creates two distinct offenses is that it intends to permit cumulative sentences, and legislative silence on this specific issue does not establish an ambiguity or rebut this presumption...." *Garrett v. United States*, 471 U.S. at 793, 105 S.Ct. at 2419; accord, *Lauthern v. State*, 769 P.2d at 354.[8] Here we have separate offenses with separate penalty provisions that are contained in separate titles of the statutes. There is no ambiguity as to the reach of either of the two statutes or as to the punishments permitted. *Albernaz v. United States*, 450 U.S. at 336, 101 S.Ct. at 1141.[9]

We also look for guidance in the purposes of the statutes. "Where independent but overlapping statutes are directed to separate evils, cumulative punishments are

intended. *Birr*, 744 P.2d 1121; *Albernaz*, 450 U.S. at 343 [101 S.Ct. at 1144]." *Lauthern v. State*, 769 P.2d at 355. Both statutes are directed toward the prevention of bodily injury, however one statute protects against drunken drivers while the other protects against outrageous conduct, regardless of the actor's state of sobriety. Those are sufficiently separate purposes to trigger the inference of legislative intent to authorize cumulative. punishments.

Legislative history is another source from which intent may be inferred. While there is no direct legislative history regarding the interplay of these two statutes, the legislature is obviously aware of the problems the drunk driver creates and it has responded with what can only be described as unmistakable clarity. It has given the matter serious attention and has exerted unrelenting pressure on drunken drivers. Upon review of the D.W.U.I. statute we are impressed with the interest the legislature has demonstrated.

In 1980 the legislature amended § 31–5–233, W.S.1977. It increased the fine for D.W.U.I., provided for a minimum jail term for both the first and subsequent offenses and increased the maximum jail time for subsequent convictions. 1980 Wyo.Sess.Laws, ch. 58, § 1. In 1981 it

---

Congress intended that there be only one offense—that is, a defendant could be convicted under either statutory provision for a single act, but not under both—there would be no statutory authorization for a subsequent prosecution after conviction of one of the two provisions, and that would end the double jeopardy analysis. Cf. *Albrecht v. United States*, 273 U.S. 1, 11, 47 S.Ct. 250, 253–254, 71 L.Ed. 505 (1927).

**8.** Appellant argues that a contrary rule of construction appears in the cases. He relies on language in *Whalen v. United States*, 445 U.S. 684, 692–693, 100 S.Ct. 1432, 1438–1439, 63 L.Ed.2d 715 (1980), repeated in *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983):

The assumption underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent.

The argument confuses the Court's holding by equating acts and offenses. The presumption is not against cumulative punishments for the same *act*, it is against cumulative punishments for the same *offense*. Whether the charged offenses are the same depends upon the application of the test announced in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), discussed *infra*. Applying the *Blockburger* test to this case indicates that Nowack committed two *offenses*, albeit in the same *transaction*.

**9.** Appellant also implies that there is an ambiguity as to legislative intent in the application of the two statutes and that ambiguity should be resolved in favor of lenity. But, the point made in *Albernaz v. United States*, 450 U.S. at 342, 101 S.Ct. at 1144 [quoted *supra* at page 564], is that the rule of lenity comes into play, if at all, after analysis of legislative intent, not before the analysis has even begun. The *Blockburger* test is the vehicle of reasoned analysis. Application of that test reveals no ambiguity.

again increased the fine, but removed the mandatory jail term for a first offense. 1981 Wyo.Sess.Laws, ch. 12, § 1. In 1982 it again increased the maximum jail sentence and fine for a first offense D.W.U.I., added injury causing D.W.U.I. to the statute, and created the D.W.U.I. homicide by vehicle statute (§ 31–5–1117, W.S.1977). 1982 Wyo.Sess.Laws, ch. 50, § 1. In 1984 it made technical amendments to § 31–5–233, W.S.1977 and, in a rather sharp comment upon the practice of "dealing" D.W.U.I. offenses, provided that a prosecutor could not dismiss or reduce a D.W.U.I. charge "unless the prosecuting attorney in open court moves or files a statement to reduce the charge or dismiss, with supporting facts, stating that there is insufficient evidence to sustain the charge." 1984 Wyo.Sess.Laws, ch. 41, § 2. In 1985 it made technical changes to clarify the penalties for injury-producing D.W.U.I. for a first offense (misdemeanor) or subsequent offense (felony). 1985 Wyo.Sess. Laws, ch. 39, § 1. In 1985 it also raised the penalty (from 30 days driver's license suspension to six months suspension) for refusing a chemical test for alcohol upon a D.W.U.I. arrest. 1985 Wyo.Sess.Laws, ch. 211, § 1. In 1987 it made additional technical amendments to the statute. 1987 Wyo. Sess.Laws, ch. 131, § 1. In 1989 it amended the statute to make it a "per se" violation of the statute if a driver's alcohol concentration is 0.10 or greater. 1989 Wyo.Sess.Laws, ch. 119, § 2. It also increased the maximum length of probation which might be imposed for a D.W.U.I. offense, raising it from six months to three years. 1989 Wyo.Sess.Laws, ch. 39, § 1.

In 1982 the Legislature amended § 31–5–233, W.S.1977 to require the court to confiscate the driver's license of persons convicted of D.W.U.I. 1982 Wyo.Sess. Laws, ch. 52, § 1. In December 1983, this Court invalidated that provision as violative of the separation of powers doctrine. *State Ex Rel. Motor Vehicle Div. v. Holtz,* 674 P.2d 732 (Wyo.1983). The legislature responded in the 1984 session by requiring the driver's license of a person arrested for D.W.U.I. be surrendered to the arresting officer [§ 31–5–1205(k) ].[10] 1984 Wyo.Sess. Laws, ch. 41 § 3.

We are satisfied that the legislature contemplated two separate types of conduct in the statutes and intended cumulative punishments. In fact, we are persuaded that any other interpretation could not offer a sense of symmetry to the punishment scheme which most would regard as fair. To accept Nowack's argument that he could only be punished for the misdemeanor would render the absurd result the trial judge sought to avoid—that of punishing outrageous drunken driving less severely than the same outrageous driving by a sober person. Another alternative might be to leave the felony conviction to stand, but not both the felony and the misdemeanor. That approach treats the sober driver and the drunken driver the same, but it also frustrates the legislature's efforts in dealing with the problem of drunk drivers and ignores the legislature's purpose of reducing the carnage on our highways.[11]

 Being satisfied that the legislature intended cumulative punishments we could end our inquiry if we were considering multiple punishments imposed after a single trial. But legislative intent alone is insufficient to pass muster under the double jeopardy restriction upon successive trials for the same offense. That brings us to our task, which is to determine whether aggravated assault and battery is the same offense as injury causing D.W.U.I.. The test for that determination has come to be the one announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) at [304, 52 S.Ct. at 182].[12]

**10.** It also required that a temporary license be issued pending trial and provided that the regular license be retained by the State upon conviction, but returned to the driver upon acquittal. [§ 31–7–138]. 1984 Wyo.Sess.Laws, ch. 41, § 1; § 3.

**11.** In considering D.W.U.I. related statutes we have noted the legislative purpose to reduce the carnage on the highways. *Felske v. State,* 706 P.2d 257, 261 (Wyo.1985); *Small v. State,* 689 P.2d 420, 426 (Wyo.1984), cert. denied 469 U.S. 1224, 105 S.Ct. 1215, 84 L.Ed.2d 356 (1984).

**12.** While *Blockburger* involved multiple convic-

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. *Gavieres v. United States*, 220 U.S. 338, 342, 55 L.Ed. 489, 490, 31 S.Ct. 421 [422], and authorities cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in *Morey v. Commonwealth*, 108 Mass. 433: "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

*Morey v. Commonwealth*, 108 Mass. 433, 434 (1871), a multiple trial case, was thus the source of the "same evidence" test of double jeopardy relied upon in the *Blockburger* opinion. However the *Blockburger* opinion omitted language which aids an understanding of the test. In *Morey* the Massachusetts Supreme Court said:

> A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. *The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offence.* [emphasis supplied]

*Blockburger* makes clear that its test centers upon statutory elements and allegations in the charging instruments, not upon the proofs to be adduced at trial. The United States Supreme Court has reinforced that idea more than once. *Illinois v. Vitale*, 447 U.S. at 416, 100 S.Ct. at 2265; *Brown v. Ohio*, 432 U.S. at 166, 97 S.Ct. at 2225; *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975). In *Brown* a plea of guilty to joyriding was held to bar a later prosecution for auto theft because joyriding was a lesser included offense of auto theft. Emphasizing that the *Blockburger* test required that *each* offense contain an element not present in the other, the *Brown* Court pointed out that the difference between the two offenses was the intent of the defendant. Auto theft required proof of an element not found in joyriding, intent to permanently deprive the owner of possession of his property. Thus auto theft required proof of an additional element, so the first half of the *Blockburger* test was satisfied. But since intent to permanently deprive the owner of possession was immaterial for joyriding, the second half of the *Blockburger* test was not met. Proof of auto theft necessarily proves joyriding. Since *each* offense did not contain a different element the *Blockburger* test was not satisfied and the second prosecution was improper under the Constitution. To the same effect is *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) and *Ex parte Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889). Both of those cases barred prose-

tions in a *single trial* based upon the same conduct, the Court relied upon precedents involving successive prosecutions. In single trial/multiple punishment cases the *Blockburger* test is an aid to determining legislative intent in the absence of more meaningful criteria. *See, Whalen v. United States*, 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980); *Abernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 1139, 67 L.Ed.2d 275 (1981); *Lauthern v. State*, 769 P.2d 350 (1989); *Birr v. State*, 744 P.2d 1117 (Wyo.1987); *Schultz v. State*, 751 P.2d 367 (Wyo.1988). But in successive trial cases the test has significance to the point of constitutional dimension. *Illinois v. Vitale*, 447 U.S.

410, 100 S.Ct. 2260; *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In other words, regardless of the intent of the legislature to impose multiple punishments for the same offense the double jeopardy clause would bar multiple trials. In this case application of the *Blockburger* test serves two purposes. First, it is a useful guide to legislative intent and, in that regard, reinforces our conclusion that the legislature intended cumulative punishments under the circumstances of this case. Second and more importantly, it is the test of whether multiple trials for these offenses are constitutionally permitted. *Brown v. Ohio*, 432 U.S. at 166–167, note 6, 97 S.Ct. at 2226, note 6.

cution of a lesser included offense after a conviction of the greater offense.

In this case application of the *Blockburger* test is straight forward—the two offenses are not the same. Even though both violations arose from the same incident and both have a common element (serious bodily injury caused by the defendant's conduct), each has an element not found in the other. The injury-producing D.W.U.I. requires proof of driving while intoxicated to a degree making him incapable of safely driving,[13] an element missing from aggravated assault and battery. On the other hand, aggravated assault and battery requires proof of an element not found in injury-producing D.W.U.I., that being reckless conduct "manifesting extreme indifference to the value of human life."

*Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, was a case similar to this one. Vitale was convicted of failing to reduce speed to avoid an accident in which two children were killed. After his speeding conviction, he was charged with involuntary manslaughter. The lower courts barred the second (manslaughter) trial under the double jeopardy clause of the Fifth Amendment to the United States Constitution reasoning that the lesser offense required no proof beyond that necessary for conviction of the greater. The United States Supreme Court reversed and remanded the case for application of Illinois law in accordance with its analysis of the double jeopardy issues discussed. In applying the *Blockburger* test it focused on the statutory elements rather than the evidence to be presented at trial and concluded that the offenses were not necessarily the same. It said [447 U.S. at 419, 100 S.Ct. at 2266]:

> The point is that if manslaughter by automobile does not always entail proof of a failure to slow, then the two offenses are not the "same" under the Blockburger test. The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of its manslaughter case would not be sufficient to bar the latter prosecution.

However, the Court also said [at 421, 100 S.Ct. at 2267]: "By analogy, if in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution." The latter quote has caused some confusion regarding the extent to which the state may rely on the same evidence of misconduct in a second trial.[14] Since then the Court has un-

---

**13.** The essence of D.W.U.I. is *not necessarily* unsafe driving, but the inability to drive safely. We drew that distinction in *Olson v. State,* 698 P.2d 107 (Wyo.1985), where we said [at 114–115]:

> It is not required that he first drive in an unsafe manner and perhaps become involved in an accident before arrest for D.W.U.I. is possible. As stated by appellee: "There is no requirement under * * * law that a lifeless and mangled body be pulled from the twisted wreckage of an automobile before an individual is arrested for drunk driving." Proof of unsafe driving is not required although such is competent evidence to be considered with all of the other evidence in determining whether the driver is under the influence of intoxicating liquor to a degree that he is incapable of safely driving.

**14.** Some cases have held that double jeopardy standards are violated if the same evidence or conduct is used as proof in a subsequent trial. See, e.g., *State v. Lonergan,* 16 Conn.App. 358, 548 A.2d 718 (1988); *Lee v. Probate Court,* 807

F.2d 512, 514 (6th Cir.1986); *Flittie v. Solem,* 775 F.2d 933, 938–39 (8th Cir.1985); *Jordan v. Virginia,* 653 F.2d 870, 873 (4th Cir.1980); *Pandelli v. United States,* 635 F.2d 533, 539 (6th Cir.1980); *Jeffrey v. District Court,* 626 P.2d 631, 636 (Colo.1981) (en banc); *Baker v. State,* 425 So.2d 36, 40 (Fla.App.1982) (Sharp, J., concurring); *State v. Ferrell,* 67 Md.App. 631, 508 A.2d 1023 (1986); *State v. Gardner,* 315 N.C. 444, 340 S.E.2d 701 (1986); *State v. DeLuca,* 108 N.J. 98, 527 A.2d 1355 (1987); *State v. Dively,* 92 N.J. 573, 458 A.2d 502 (1983); *State v. Carter,* 291 S.C. 385, 353 S.E.2d 875 (1987); *State v. Grampus,* 288 S.C. 395, 343 S.E.2d 26 (1986); Ex parte *Peterson,* 738 S.W.2d 688 (Tex.Crim.App.1987); *May v. State,* 726 S.W.2d 573 (Tex.Crim.App. 1987) (en banc); c.f. *Wilson v. Zant,* 249 Ga. 373, 290 S.E.2d 442 (1982); *Haynes v. State,* 249 Ga. 119, 288 S.E.2d 185 (1982).

Several courts have held that *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, reinforced the *Blockburger* rule of reliance on the elements, not the evidence. See, e.g., *United States v. Genser,* 710 F.2d 1426, 1429–31 (10th Cir.1983);

equivocally held that the test of double jeopardy is statutory elements, not evidence produced at trial. *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407.

*United States v. Phillips*, 664 F.2d 971, 1005–1006 (5th Cir.1981); *United States v. Brooklier*, 637 F.2d 620, 623–24 (9th Cir.1980), cert. denied, 450 U.S. 980, 101 S.Ct. 1514, 67 L.Ed.2d 81581214016 (1981); *State v. Seats*, 131 Ariz. 89, 638 P.2d 1335 (1981) (en banc); *Carlson v. State*, 405 So.2d 173 (Fla.1981); *People v. Jackson*, 118 Ill.2d 179, 113 Ill.Dec. 71, 514 N.E.2d 983 (1987), overruling *People v. Zegart*, 83 Ill.2d 440, 47 Ill.Dec. 336, 415 N.E.2d 341 (1980), cert. denied, 452 U.S. 948, 101 S.Ct. 3094, 69 L.Ed.2d 961 (1981); *People v. Walker*, 109 Ill.2d 484, 94 Ill.Dec. 530, 488 N.E.2d 529 (1985).

In *Thigpen v. Roberts*, 468 U.S. 27, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984), the United States Supreme Court passed up an opportunity to clear the air. On federal habeus corpus, a homicide conviction was stuck because it was obtained after the defendant was convicted of reckless driving, driving while intoxicated, driving with a revoked license, and driving on the wrong side of the road. The lower federal courts held that the homicide conviction was barred on double jeopardy grounds. *Roberts v. Thigpen*, 693 F.2d 132 (5th Cir.1982), The United States Supreme Court granted certiorari to review that issue, but affirmed on grounds of prosecutorial vindictiveness (the State indicted for homicide after the defendant appealed his four misdemeanor convictions in justice of the peace court and his case was transferred to a circuit court for trial de novo). In dissent Justice Rehnquist said [468 U.S. at 34–35, 104 S.Ct. at 2924–25]:

I believe that the Court is obligated to confront the State's contention that the Court of Appeals misapplied the Double Jeopardy Clause of the Fifth Amendment in this case. The Court being unwilling to undertake that obligation, I turn to it in dissent....

In reaching this conclusion, I believe that the Court of Appeals mistakenly relied upon a mere form of expression in the Court's opinion in *Illinois v. Vitale*, [447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980)], to depart from all of our previous double jeopardy holdings in this area. The Court of Appeals apparently felt that the Vitale opinion changed governing double jeopardy law to permit a defendant to establish a substantial, and apparently dispositive, claim of double jeopardy merely by showing that the State actually relied upon the same evidence to prove both crimes. While there is one sentence in the Court's opinion in Vitale that supports this construction, I do not believe that construction is consistent with the opinion as a whole. Until the present case, the relevant question to be answered by any court is whether the evidence required to prove the statutory elements of crime is the same, not whether the evidence actually used at trial is the same.

In Vitale the Supreme Court of Illinois had held that the Double Jeopardy Clause of the Fifth Amendment barred the prosecution of a defendant for manslaughter because the defendant had previously pleaded guilty to a charge of failing to reduce speed arising out of the same incident. This Court vacated the judgment of the Supreme Court of Illinois, saying: "The point is that if manslaughter by automobile does not always entail proof of a failure to slow, then the two offenses are not the 'same' under the Blockburger test. The mere possibility that the State will seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of its manslaughter case would not be sufficient to bar the latter prosecution." ...

It seems to me that this is about as clear a statement as there can be of the principle that the double jeopardy inquiry turns on the statutory elements of the two offenses in question, and not on the actual evidence that may be used by the State to convict in a particular case. Nonetheless, the Court went on in Vitale to distinguish *Harris v. Oklahoma*, 433 U.S. 682 [97 S.Ct. 2912, 53 L.Ed.2d 1054] (1977), and in so doing stated: "By analogy, if in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter, Vitale would have a substantial claim of double jeopardy under the Fifth and Fourteenth Amendments of the United States Constitution."

...

I cannot say that this last expression did not afford the Court of Appeals some ground for the views which it expressed, nor can I say that I think it is entirely consistent with the first quotation from the Vitale opinion. But I am reasonably sure that the Court did not intend to transmute the traditional double jeopardy analysis from an either "up or down" inquiry based on the evidence required to prove the statutory elements of a crime into a "substantial claim" inquiry based on the evidence that the State introduced at trial. I think that there are ambiguities in *Illinois v. Vitale* which urgently need resolution by this Court, that the present case affords an ample opportunity to do this, and that the Court's failure to do it is an unexampled abdication of its responsibility.

I would unambiguously reaffirm the statement in *Brown v. Ohio*, 432 U.S. 161 [97 S.Ct. 2221, 53 L.Ed.2d 187] (1977), relied upon in *Illinois v. Vitale*, supra, that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 432 U.S., at 166, 97 S.Ct. at 2225, quoting *Blockburger v. United States*, 284 U.S. 299, 304 [52 S.Ct. 180, 182, 76 L.Ed. 306] (1932).... The actual evidence test which the Court of Appeals inferred from the single sentence in Vitale has never been applied to bar a second trial on grounds of double jeopardy." (Citations omitted)

In *People v. Jackson*, 118 Ill.2d 179, 113 Ill.Dec. 71, 514 N.E.2d 983 (1987) the defendant entered pleas of guilty to D.W.U.I. and illegal transportation of alcohol. Later he was indicted on two counts of reckless homicide. One count alleged that he caused the death of another by reckless swerving which resulted in his vehicle hitting a tree. The other count alleged that his driving under the influence of alcoholic beverages caused his erratic driving which, in turn, caused the death of the passenger. The lower courts held that the homicide prosecution was barred on double jeopardy grounds. The Illinois Supreme Court reversed, relying upon *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260. The court did a traditional *Blockburger* analysis focusing upon the elements rather than the evidence and concluded that the offenses were not the same. It decided that so long as the D.W.U.I. conviction did not automatically establish reckless conduct there was no double jeopardy. It went on to discuss the ramifications of presenting evidence of driving while intoxicated in the second (homicide) trial and concluded that the State could present evidence of driving under the influence in the second trial as evidence of recklessness even though that same evidence was necessary for the prior D.W.U.I. conviction.

In a different context the United States Supreme Court has reaffirmed that same principle. *Garrett v. United States*, 471 U.S. at 793, 105 S.Ct. at 2418–19. Garrett was tried and convicted in Florida of several drug offenses, one of which was engaging in a continuing criminal enterprise in violation of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 848. To prove the latter charge, which requires three "predicate offenses," the government introduced proof of Garrett's drug smuggling. Included as one of the "predicate offenses" in the government's proofs were acts for which Garrett had been earlier convicted (upon his plea of guilty pursuant to a plea bargain) in the State of Washington. The Court distinguished *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, and held that the second trial did not violate the double jeopardy clause of the Fifth Amendment.

We continue to adhere to traditional *Blockburger* analysis. *Lauthern v. State*, 769 P.2d 350; *State v. Carter*, 714 P.2d 1217. In comparing the two charged offenses we conclude that each requires proof of an element not necessary for proof of the other. The fact that evidence of driving under the influence was relied upon in the aggravated assault and battery trial is of no moment.[15] The defendant was not twice subjected to trial for the same offense.

Affirmed.

---

**15.** At trial the State presented proof of Nowack's intoxication as well as other evidence of erratic, dangerous, and irresponsible driving. Had the defendant been acquitted in a prior trial it may have been necessary to determine if *issues* had been determined in the first trial which, under principles of collateral estoppel, would be barred from re-litigation. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). But the matter to be determined would be issue preclusion, not evidence preclusion. Even if issues were barred from re-litigation that does not mean the State would necessarily be precluded from again presenting the same facts. Those facts would be properly admissible if they were probative of issues not fully adjudicated.