2007 WY 121

Norman Howard WENGER,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 06–90.

Supreme Court of Wyoming.

Aug. 1, 2007.

Representing Appellant: Kenneth M. Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Public Defender; Sylvia Lee Hackl, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] A jury convicted Norman Howard Wenger of one count of conspiring to engage in a clandestine laboratory operation and one count of aiding another person to engage in such an operation. The trial court sentenced him to two concurrent prison sentences of two to eight years. Mr. Wenger claims the trial court erred in failing to merge his convictions for sentencing purposes. We reverse the judgment and sentence, but not for the reason advanced by Mr. Wenger. Rather, we hold that Wyo. Stat. Ann. § 35–7–1059(a)(iv) (LexisNexis 2007), the statute under which he was convicted, was intended to describe alternative means of committing the same offense and does not support separate convictions for each act constituting the offense. We remand to the district court for entry of a judgment and sentence finding Mr. Wenger guilty of one count in violation of § 35–7–1059(a)(iv) and imposing one sentence.

**ISSUES**

[¶ 2] The determinative issue is whether the legislature intended § 35–7–1059(a)(iv), which prohibits conspiring with or aiding another to engage in a clandestine laboratory operation, to describe alternative means of

committing one offense such that it supports only one conviction and one sentence.

## FACTS

 In December 2004, Mr. Wenger met Robert Holzheuser and allowed him to move into an apartment he was renting in Rawlins, Wyoming. On February 8, 2005, Mr. Wenger was at the apartment when Mr. Holzheuser and two companions arrived. The four individuals smoked methamphetamine together.

 That same evening, Rawlins police officer William Hill was conducting surveillance on the apartment in connection with reports from two individuals that they had purchased methamphetamine from Mr. Wenger. Officer Hill observed Keith Nulle drive up to the apartment, go inside for about ten minutes, and then drive away. Officer Hill checked Mr. Nulle's driving record and learned that his license was suspended. Officer Hill pulled Mr. Nulle over, placed him under arrest for driving under suspension, searched him and found methamphetamine inside a cigarette pack he was carrying.

 Based on the information that Mr. Wenger had sold methamphetamine to others and the methamphetamine found on Mr. Nulle after leaving Mr. Wenger's apartment, Officer Hill obtained a warrant to search the apartment. He and five other law enforcement officers executed the warrant later that same night. The officers knocked on the apartment door and, when no one responded, they broke down the door. Upon entering the apartment, the officers found four people in the living room, including Mr. Wenger, and arrested them. The officers also found methamphetamine, a mini torch, pipes, a car battery with the caps off hooked to a charger, a bottle of acetone, and other material associated with the manufacture of methamphetamine. Additionally, the officers noticed a strong chemical smell in the apartment.

[¶ 6] Detective Mike Picerno was called to the scene. After inspecting the apartment, Detective Picerno was concerned it was being used as a methamphetamine manufacturing laboratory. He contacted the Wyoming Division of Criminal Investigation (DCI), the agency trained and experienced in working with clandestine laboratories. Because of safety concerns, Detective Picerno removed everyone from the premises and secured the apartment. He interviewed Mr. Wenger, who indicated the items found in the apartment belonged to Mr. Holzheuser. Mr. Wenger also stated that he used methamphetamine supplied to him by Mr. Holzheuser in exchange for use of the apartment. He also stated that he, Mr. Holzheuser and the other two individuals had smoked methamphetamine that evening before the police arrived. Subsequent searches of the apartment revealed more items associated with the manufacture of methamphetamine.

 Mr. Wenger was charged with one count of conspiring with another to engage in a clandestine laboratory operation in violation of § 35–7–1059(a)(iv) and a second count of aiding another to engage in a clandestine laboratory operation in violation of the same statute. After a two day trial, a jury found Mr. Wenger guilty on both counts. The district court sentenced Mr. Wenger to a term of two to eight years in the state penitentiary on the conspiracy conviction and a term of two to eight years on the aiding conviction with the two terms to be served concurrently.

## DISCUSSION

 [¶ 8] Mr. Wenger claims that the district court's failure to merge his convictions at sentencing violated his right to be free from double jeopardy because the effect of the sentence is to punish him twice for a single offense. The State responds that Mr. Wenger was convicted of two separate and distinct offenses and the district court properly declined to merge the sentences. Neither party addresses the issue we find determinative: Whether the legislature intended the statute to describe alternative means of committing a single offense supporting a single conviction and sentence, or whether the legislature instead intended to punish each act described in the statute separately, permitting separate convictions and sentences.

 The statute which was the basis for both of Mr. Wenger's convictions provides:

(a) It is unlawful for any person to knowingly or intentionally:

\* \* \*

(iv) Conspire with or aid another to engage in a clandestine laboratory operation.

Section 35–7–1059(a)(iv). The jury was instructed that in order to find Mr. Wenger guilty of the act of conspiracy described in the statute, the State had to prove each of the following elements beyond a reasonable doubt:

1. On or about the 9th day of February, 2005
2. In Carbon County, Wyoming
3. The Defendant, Norman Howard Wenger
4. Knowingly and intentionally agreed with one or more persons
5. That they or one of them would commit the crime of engaging in a clandestine laboratory operation;
6. One or more of them did an overt act in Carbon County, Wyoming, to effect the objective of the agreement.

The jury was further instructed that to find Mr. Wenger guilty of the act of aiding described in the statute the State had to prove each of the following elements beyond a reasonable doubt:

1. On or about the 9th day of February, 2005
2. In Carbon County, Wyoming
3. The Defendant, Norman Howard Wenger
4. Did knowingly or intentionally aid another
5. To engage in a clandestine laboratory operation.

The jury found Mr. Wenger guilty of both acts described in the statute. The district court entered a judgment and sentence on the verdict, adjudging Mr. Wenger guilty of one count of conspiring with another to engage in a clandestine laboratory operation and a separate count of aiding another to engage in such an operation and sentencing him to two concurrent terms of imprisonment.

[¶ 10] In *Duffy v. State*, 789 P.2d 821, 825 (Wyo.1990) (citations omitted), the Court said:

The rule that we have espoused for resolving the question of whether a defendant has been twice placed in jeopardy by virtue of multiple convictions and sentences is to look to the intention of the legislature with respect to whether the conduct should be punished as a single offense or as more than one.

\* \* \*

In determining the question of legislative intent, we have examined statutory definitions, and we also have evaluated the other circumstance[s] surrounding the crimes charged, whether they grow out of different transactions or different evidence is required to establish the separate offenses.

[¶ 11] The Duffy Court noted specifically:

If it is clear that the legislature intended alternative means of committing a single offense, only one conviction can be attained even though different evidence would be required to demonstrate the alternative means of committing the offense.

*Id.* fn. 4 (citations omitted). Later in the opinion, the Court reiterated:

[W]hen we have determined that the intention was to create only a single continuing offense or to describe alternative means of committing the same offense, the State may not structure multiple violations even though some separate evidence might support the several charges.

*Id.* at 826.

In those instances in which the language and purpose of the statute indicate a legislative intent to structure a single offense with alternative methods specified by which the statute may be violated, any violation of the statute is a single offense. According to the general rule, this is the result even if the evidence demonstrates that the statute has been violated in both of the alternative ways and, in such an

instance, only one conviction can be sustained.

*Id.* at 827.

■ [¶ 12] The first step in our inquiry, therefore, is to determine the legislature's intent in enacting § 35–7–1059(a)(iv). In making that determination, we begin with the plain wording of the statute. *Nowack v. State*, 774 P.2d 561, 567 (Wyo.1989). Section 35–7–1059(a)(iv) contains no express statement that the legislature intended a single punishment for conspiring with or aiding another in the operation of a clandestine laboratory. However, the rules of statutory construction help us to ascertain the legislature's intent.

[¶ 13] In *Nowack*, we said when the legislature creates two distinct offenses the presumption is that it intends to permit cumulative sentences. *Id.* at 567. Thus, in *Nowack*, where there were two separate offenses—causing serious bodily injury to another while driving under the influence in violation of Wyo. Stat. Ann. § 31–5–233(a) and (g) (Michie 1977), and aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(i) (Michie 1977)—with separate penalty provisions contained in separate titles of the statutes, we concluded the legislature intended to permit cumulative sentences. Here, we have one offense with one penalty provision that is contained in a single title of the statutes.

■ [¶ 14] We also look for guidance in the purposes of the statutes. "Where independent but overlapping statutes are directed to separate evils, cumulative punishments are intended." *Nowack*, 774 P.2d at 567. In *Nowack*, we concluded both statutes were directed toward the prevention of bodily injury; however, one statute protected against drunken drivers while the other protected against outrageous conduct, regardless of the actor's state of sobriety. We concluded those were sufficiently separate purposes to trigger the inference of legislative intent to authorize cumulative punishments.

[¶ 15] The purpose of the statute at issue here is to prevent the operation of clandestine laboratories which pose a danger to human safety. The acts prohibited by the statute—conspiring with or aiding another to engage in such an operation—would seem to be directed at preventing the same harm and are not sufficiently distinguishable to indicate the legislature intended to create separate offenses or authorize separate punishments.

■ [¶ 16] Legislative history is another source from which intent may be inferred. *Id.* In *Nowack*, we found no direct legislative history concerning the relationship between the two statutes, but concluded from the legislature's response to the problems caused by drunk driving that it intended to create two separate offenses with two separate punishments. There is no question that the operation of clandestine laboratories is a serious offense which the legislature has taken significant steps to prohibit. However, keeping in mind that cumulative punishment is not authorized without a clear indication of legislative intent, *Cook v. State*, 841 P.2d 1345, 1352 (Wyo.1992), we conclude that the legislature intended § 35–7–1059(a)(iv) to describe alternative means of committing a single offense supporting a single conviction and sentence.

[¶ 17] Our holding is consistent with those of other courts that have addressed statutes describing alternative means of committing an offense. In *Commonwealth v. Lopez*, 444 Pa.Super. 206, 663 A.2d 746 (1995), for example, the court considered 18 Pa.C.S.A. § 3301(a), which criminalized the act of committing arson in a manner that places another in danger. The Court said:

> [T]he word "or," used in its ordinary sense, indicates an alternative between two or more unlike actions. Applying that definition to 18 Pa.C.S.A. § 3301(a), we read the statute to mean that any person who either "recklessly places another person in danger of death or bodily injury" or "commits the act with the purpose of destroying or damaging an inhabited building or occupied structure of another" may be prosecuted for and convicted of committing arson endangering persons. However, it simply does not follow from this reading that a person who commits both of the above acts may be sentenced twice for arson endangering persons when only one criminal offense, i.e., starting one fire, has

been committed. Not only does such a reading ignore the plain meaning of the word "or," but if applied could raise grave constitutional issues. *See Commonwealth v. Bostic,* 500 Pa. 345, 456 A.2d 1320 (1983) (intent of double jeopardy clause is to prevent courts from imposing more than one punishment under particular legislative enactment); *Commonwealth v. Ayala,* 492 Pa. 418, 424 A.2d 1260 (1981) (where, practically speaking, there was only one offense against Commonwealth, defendant may only be punished for one offense, despite number of chargeable offenses arising out of single transaction); *Commonwealth v. Williams,* 344 Pa.Super. 108, 496 A.2d 31 (1985).

[¶ 18] Similarly, in *U.S. v. Levine,* 750 F.Supp. 1433 (D.Col.1990), the court concluded that the defendants were properly charged in a single count with a conspiracy to defraud the United States and to commit offenses against the United States, alternative language found in 18 USCS § 371. The court stated:

> "[I]t would be strange to infer that Congress intended to punish twice a conspiracy that violates both clauses. Where a single conspiracy statute prohibits alternative acts, courts should not infer the legislature's intent to impose multiple punishment. The clause 'defraud the United States' merely expands the scope of the offense by including another object of a conspiracy that might not otherwise be covered by the clause 'any offense.'"

Furthermore, § 371 creates a single offense but specifies alternative means to commit the offense.

[¶ 19] We reverse and remand for imposition of judgment finding Mr. Wenger guilty of one count in violation of the statute and sentencing him to one term of imprisonment.